McClendon *v.* State.

4121                                   126 S. W. 2d 928
Opinion delivered April 3, 1939.

1136

*C. C. Hollensworth, Clinton Campbell, J. Mack Tarpley* and *Aubert Martin*, for appellant.

*Jack Holt*, Attorney General and *Jno. P. Streepey*, Asst. Atty. General, for appellee.

HUMPHREYS, J. On the 25th day of May, 1938, the prosecuting attorney of the 10th judicial district of Arkansas filed information in Bradley county charging appellant with murder in the first degree, committed by striking and cutting Richard Reed, with an ax on November 3, 1937, from which wounds the said Richard Reed died on March 14, 1938.

On November 7, 1938, appellant was tried in said county and convicted of murder in the first degree and on the 8th day of May was adjudged to serve for life in the penitentiary as punishment for the crime, from which an appeal has been duly prosecuted to this court.

The testimony introduced on the trial of the cause is as follows: Judge Williams, Judge being his given name, testified, in substance, that he was working for Mr. Reed and went with him to appellant's house to collect $10; that the first visit was about 10:30 a. m. at which time appellant told Mr. Reed to come back about noon and he would pay Reed the debt; that they went back at about 11:30 a. m. and were invited into the house by Exa, appellant's wife, and after entering the kitchen saw appellant behind the stove cooking; that Exa said her husband was not going to pay the debt until thev sold their furniture, whereupon, Reed, addressing appellant, said "Come go with me, Jim," (Referring to appellant)

meaning that he wanted him to go with him to Bradley's store where there was something due him for work he had done; that appellant said, "I will be ready in a few minutes"; that Exa told us to get out of the house, that Jim was not going and then threw a pan of corn bread which hit Mr. Reed; that he tried to ward off the bread and then grabbed her and tried to keep her from hitting Mr. Reed and while he had hold of her appellant came from behind the stove and hit at him with a pole-ax and that he threw up his arm and caught part of the lick on top of his head; that Mr. Reed told them not to fight and said, "I will give you the debt," at which time appellant ran around witness and hit Mr. Reed on the side of the head with the ax, and ran out of the house; that witness also ran out of the house and had a neighbor call the sheriff.

Witness admitted on cross-examination that he had sworn on a trial in February that neither he nor Reed had a pistol when they went to appellant's home which testimony was admitted to have been false as Mr. Reed had a pistol which he had gotten from a friend that morning before they went to appellant's house, but after the admission said that neither he nor Mr. Reed drew the pistol or attempted to use it during the fight.

Mrs. Richard Reed (widow of the deceased) testified that she saw her husband at the hospital on November 3, 1937, a short time after he had been taken over there and that he had a wound on the side of his head from the effects of which he died on the 14th day of March, 1938.

C. W. Hickman, sheriff of the county and his deputy, J. J. Johnson, who arrested appellant and his wife, testified that appellant admitted to them he hit Mr. Reed on the head with the ax which he got off the porch just outside the kitchen door, and when asked why he did not keep going instead of getting the ax he replied that he was mad.

J. H. Crawford, the town marshal, testified that he went with Williams to appellant's home, in search of appellant and his wife, and found an ax either on the outside or in the house; that he took the ax and kept it in

1138

his locker until the trial at which time he brought it
to court; that he found a broken pot containing beans on
the table in the kitchen, a skillet and lots of dough on the
floor and a broken stick like a broom handle in the kitchen,
and that he did not remember whether Williams told him
that he snapped a pistol at appellant.

The physicians who operated upon and treated Mr.
Reed testified that in their opinion Mr. Reed died on
March 14, 1938, as a result from the wound he received on
November 3, and that he did not die from any independent
cause.

Exa McClendon, appellant's wife, who was sixteen
years of age at the time of the difficulty and seventeen
years of age at the time she gave her testimony, testified,
in substance, that Mr. Reed and Williams came to their
home three times during the morning the difficulty oc-
curred and that on the first and second visits Mr. Reed
talked to her husband about collecting a debt he owed
Mr. Reed and that there was no dispute or any differences
between them at that time; that on the third visit Wil-
liams went into the kitchen and told her husband the sher-
iff had sent him out to bring him down town; that Wil-
liams had a pistol in his pocket and while her husband
was taking some bread out of the stove Mr. Reed came in
the door and said, "Get him, Judge," and that Williams
drew the pistol on her husband; that she threw a pan of
bread she had in her hand down on the floor and grabbed
the barrel of the pistol and held it until her brother,
Jeems, who came in from his work about that time, got
near them; that Williams snapped the pistol at her hus-
band but it failed to fire; that Williams kept telling her
to get back or he would shoot; that Jeems took the pistol
away from Williams and when she tried to pass out of
the kitchen through the door Mr. Reed hit her with a stick
and that she ran out into the yard; that she did not see
her husband get the ax, but it was just outside the kitchen
door on the porch where they kept their wood.

Jeems McClendon, a brother of appellant, testified,
in substance, that when he came in from his work about
11:30 o'clock Williams, Exa and appellant were scuf-

fling over a pistol and that Mr. Reed had a stick in his hand and was threatening to get the law; that he took the pistol away from Williams, and that during the altercation Mr. Reed hit appellant, Exa and himself with the stick; that after he took the pistol he ran out to a neighbor's house and telephoned for the sheriff and waited there until the sheriff came and gave him the pistol; that he did not see the ax or his brother hit Mr. Reed.

Appellant testified, in substance, that Reed and Williams came to his house three times and that on the second visit witness promised to go to the mill and pay Mr. Reed about 5:30 o'clock; that they came back again the third time and Williams came in and told witness the sheriff had requested him to bring him down town and that he refused to go and that about that time Mr. Reed walked in the kitchen door and asked witness whether he was going and when he said "no" Reed hollered to Williams, "Get him" and Williams began to cuss, drew a pistol and snapped it at witness three times whereupon Exa threw a pan of bread down on the floor and grabbed the barrel of the pistol and while the struggle was going on over the pistol Williams took a stick from him with which he had hit Williams, Exa and himself and was going to hit her again when he reached out the door on the porch and got the ax with which he struck at Williams, but missed him and accidentally hit Mr. Reed; that he was mad and crying and did what he did in defense of his wife and himself; that during the scuffle Jeems, his brother, took the pistol away from Williams; that he then ran out of the house and left.

Appellant assigns as error the insufficiency of the evidence to sustain a verdict for murder in the first degree.

Murder in the first degree is defined by § 2969 of Pope's Digest as follows:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the at-

tempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree.''

It was said by CHIEF JUSTICE SCOTT in *Bivens* v. *State,* 11 Ark. 460, that: ''The distinctive feature of this particular class of cases of murder is a wilful, deliberate, malicious and premeditated intent to take a life. . . . It is indispensable that the evidence should show that the killing with malice was preceded by a clearly formed design to kill—a clear intent to take life.''

It was said by CHIEF JUSTICE ENGLISH in the case of *Fitzpatrick* v. *State,* 37 Ark. 238, that, ''To constitute murder in the first degree there must be a specific intent to take life beforehand and carried out with deliberation.''

These declarations of law were approved in the case of *Howard* v. *State,* 82 Ark. 97, 100 S. W. 756. In the last cited case this court set aside the judgment of murder in the first degree and affirmed it for murder in the second degree.

This court also decided in the case of *Harris* v. *State,* 119 Ark. 85, 177 S. W. 421 that, ''In the absence of premeditation and deliberation the killing can not be murder in the first degree.''

After reading the evidence in the instant case carefully and giving same its strongest probative force in favor of the finding of the jury, we hold that it is not sufficient to sustain the judgment for murder in the first degree under the law above set forth.

There is no evidence in the record tending to show any enmity between appellant and deceased prior to the difficulty resulting in the injury to deceased. All the evidence is to the effect that appellant and deceased were on good terms. Deceased had extended credit to appellant for his groceries and appellant had agreed to go with deceased and Williams to the Bradley store and give him an order for the money he owed him.

According to the testimony of the state the difficulty occurred when Exa threw a pan of bread at deceased and ordered them out of the house; that at that time Williams tried to prevent the bread from hitting

deceased and grabbed and was holding her when appellant came up from behind the stove and struck at Williams with the ax then ran around him and struck deceased with the ax from the back on the side of his head when he was walking toward the door.

Williams did not directly deny that Jeems took the pistol away from him.

There is no question that a sudden fight occurred between the parties a few moments after Williams and Reed entered the kitchen. The fight was carried on with most anything they could get their hands on as evidenced by a broken pot of beans on the table, a pan of bread or dough on the floor and a stick broken half in two and an ax which were all found at or near the scene of the difficulty. Even according to the evidence of Williams, who admitted he had been guilty of perjury, the fight began suddenly and continued without interruption until the injury was inflicted by appellant on Mr. Reed. We do not think it has been shown beyond a reasonable doubt that the killing was the result of malice, and certainly it does not show beyond a reasonable doubt that it was the result of deliberation and premeditation on the part of appellant. Appellant had no grudge against deceased, but he and deceased were friends until the difficulty arose. During the progress of the fight there was no time for him to meditate or deliberate so we have concluded that the injury inflicted upon deceased causing his subsequent death was the result of a sudden quarrel between deceased and Williams on the one part and appellant's wife on the other, in appellant's own home where he had a right to be and where deceased and Williams, an admitted perjurer and willing participant in the fight, had no right to go armed with a pistol for the purpose of enforcing the collection of a debt.

We think that when the evidence on the part of the state is viewed in the most favorable light to the state, the highest degree of homicide which it can possibly support is voluntary manslaughter.

Manslaughter is defined by § 2980 of Pope's Digest as follows:

"Manslaughter is the unlawful killing of a human being, without malice, express or implied, and without deliberation."

Voluntary manslaughter is defined by § 2981 of Pope's Digest as follows:

"Manslaughter must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible."

Appellant also contends that it is not shown beyond a reasonable doubt that the deceased died on March 14, 1938, from the effects of the wound which he received on November 3, 1937. This contention is met by the testimony of the physicians who attended the deceased after the wound was inflicted and up to the time deceased died. They both testified that in their opinion his death was the result of the injury and was not the result of any independent cause.

The judgment will, therefore, be reversed and the cause remanded for a new trial, unless the attorney general elects within fifteen days to have the appellant sentenced for voluntary manslaughter, in which event the trial court is directed to sentence appellant for that crime for seven years, which is the highest punishment fixed by statute for voluntary manslaughter.