CARSON *v.* STATE.

4631                                    232 S. W. 2d 835

Opinion delivered October 2, 1950.

*Claude F. Cooper,* for appellant.

*Ike Murry,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

DUNAWAY, J. Appellant, Wheeler Carson, questions the sufficiency of the evidence to sustain a jury verdict finding him guilty of second degree murder and fixing his punishment at twenty-one years in the penitentiary.

According to the witnesses on behalf of the State, these are the events that transpired prior to the fatal stabbing of the deceased, Chester Jones, by the appellant on the night of December 12, 1949:

About six o'clock in the evening, appellant and his brother, Finley Carson, joined the deceased, his cousin, Alberta Allen and one J. T. Baker at a cafe in Blytheville, Arkansas. The five of them drove to the Missouri state line, where they purchased a half pint of whiskey. After about thirty minutes they drove to a roadside establishment, Roy's Place, on Highway 61, the group having consumed the liquor enroute. Here they drank two or three rounds of beer. The Carson brothers had been drinking all afternoon.

From Roy's Place the party started for the Silver Slipper. Enroute Finley Carson announced that his brother, the appellant, could "whip any two sons-of-bitches" in the car. After first ignoring this assertion, which was repeated several times, the deceased said he was getting tired of being called a son-of-a-bitch; he and the appellant got out of the car and had some words, but then shook hands and proceeded to town. Later Finley renewed his provocative remarks, and an argument ensued.

Following this argument, the car was stopped again and this time the deceased and appellant exchanged some blows, the deceased being the victor in the bout. They then shook hands, got back in the car and started to take the Carsons home. On the way, at appellant's insistence that he wanted another beer, they stopped at the Silver Slipper, where the deceased went in and bought appellant a beer. While deceased was inside the Silver Slipper, appellant made the threat: "He whipped my tail once, I will get even with the son-of-a-bitch."

Upon arrival of the party at the Carson home, the appellant remained at the car after his brother went to the house, and invited the others to come in for a drink. The deceased accepted this invitation, although he had been informed of appellant's threat. After about five minutes, the deceased, who had been stabbed with a knife, came running out of the house in a bent-over position. He died on the way to the hospital. None of those in the car had heard any disturbance in the house.

660

At the trial it was shown that the deceased had suffered a breast wound about two inches long, that the breast bone had been cut through and the subclavicle artery severed.

The accused admitted having cut the deceased with a knife, but claimed he had acted in self-defense. His testimony was that the deceased started another fight, after coming in the house uninvited; that at the time of the stabbing the deceased was "raising up" from behind a stove with a metal poker. The defendant testified that he only intended to hit the deceased in the arm to disable him. The defendant's brother and father testified that they rushed into the front room, from a back room where the elder Carson had been asleep "till the racket started." Neither saw the start of the fracas, and both testified that they did not see a poker or any other weapon in the hands of the deceased. Neither witnessed the fatal stabbing.

Appellant's argument is that there is no proof of malice, and that the judgment must be reversed or reduced from second degree murder to voluntary manslaughter. To support this contention he relies upon the cases of *McClendon* v. *State,* 197 Ark. 1135, 126 S. W. 2d 928 and *Bone* v. *State,* 200 Ark. 592, 140 S. W. 2d 140. In the McClendon case the defendant had been convicted of first degree murder and in the Bone case of murder in the second degree; in both cases this court reduced the sentences to voluntary manslaughter.

It is, of course, true that the State must have proved that the killing was done with malice for a conviction of second degree murder in the case at bar to be sustained. But express malice may be proved or malice may be implied when no considerable provocation for the killing appears or where all the circumstances of the killing manifest an abandoned or wicked disposition. Ark. Stats. (1947) § 41-2204; *Ballentine* v. *State,* 198 Ark. 1037, 132 S. W. 2d 384.

In the instant case, the State's witnesses testified as to circumstances and events from which the jury might well have found that the killing was done with malice.

There was evidence of ill-feeling between the deceased and the accused prior to the fatal encounter; and there was testimony that the appellant had made threats against the deceased. The knife wound must have been inflicted with considerable force to have cut through the breast bone. Since neither the defendant's father nor brother saw the deceased with a poker in his hand when they ran into the room where, according to the father, the deceased "was backed up, right in the corner," the jury was justified in believing that there was no provocation for the killing.

The facts in the McClendon and Bone cases, *supra,* are easily distinguishable from those in the case at bar. In both of those cases there was no proof of previous ill-feeling, threats, or difficulties between the parties. On the contrary, there was positive proof of amicable relationships prior to the time of the altercation, which in each instance began in a sudden heat of passion and continued without interruption until one of those involved was killed.

Although appellant denied making any threat toward the deceased, and he and his brother gave a different version of the happenings of the evening, the jury evidently chose to believe the witnesses presented by the State. With the testimony in conflict, that was the jury's prerogative.

The judgment is affirmed.