STATE *vs.* GIACOMO RUGGIERO.

OCTOBER 27, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is an indictment for the murder of a two-year-old child, hereinafter sometimes referred to as the decedent child. After a jury verdict of manslaughter in the superior court, the defendant's motion for a new trial and his motion to discharge were denied by the trial justice. The case is here on his exceptions to the denial of the two motions, to certain evidentiary rulings and to a portion of the charge.

The defendant, a divorced man and the father of four children, began living with a woman who was the mother of two children by her husband from whom she was separated. On August 1, 1958 she bore defendant a son. In January 1959 they moved to a house in Warwick. At that time the three children were three and one-half years of age, one and one-half, and five months old respectively.

At about 2:30 p.m. on March 13, 1959 the mother and a friend of defendant left the house to keep a doctor's appointment. The defendant stayed home to take care of the children. When she left, the two older children were upstairs taking a nap and the infant was downstairs in the kitchen. When the mother and the friend returned at about 3:30 p.m. defendant was lying on a couch downstairs and the baby was upstairs napping. When asked by the mother if anything had happened while she was gone, he replied in the negative. The defendant and his friend then left the house.

The mother then went upstairs to waken the children. She found the decedent child curled up in a corner of her crib, holding her side, looking very pale and gasping for breath. While changing the child's diaper and taking her temperature, she noticed fresh bruises on the child's chest and abdomen. At the trial she testified that before leaving the house at 2:30 p.m. the child appeared to be in nor-

mal good health with no recent or fresh marks or bruises when she changed her. After telephoning a doctor she rushed the child to the nearest hospital where she died within an hour.

At the request of the state's acting chief medical examiner an autopsy was performed by Dr. Gary P. Paparo, a private physician whose qualification as a pathologist is admitted by defendant. Doctor Edward F. Asprinio, the medical examiner, was present at the autopsy as a medical witness.

The police began an investigation. The defendant was informed of the death at about 9 p.m. When first questioned by the police he denied ever going upstairs where the children were sleeping while the mother was out. He also denied taking the infant upstairs to bed, maintaining that the baby was there when the mother and the friend left the house. But several hours after his first statement to the police he changed his story and admitted taking the baby upstairs. He said that while he was playing with the decedent child he fell on top of her after she had slipped out of his hands and that he refused to tell the police the truth in the first instance because they had accused him of sexually assaulting the child.

At the trial the state proceeded on the theory that the child's death was caused by injuries resulting from a beating inflicted by defendant. The state's case rested almost entirely on the testimony of Drs. Paparo and Asprinio and on the post-mortem findings in the autopsy report prepared by Dr. Paparo. The report was introduced in evidence over defendant's objection.

Doctor Paparo testified that in his opinion the cause of death was due to specific internal injuries which were sustained within six hours prior to her death; that the abdominal injuries which he described resulted from three grounds of contact and not from one force; that they were caused by a series of forceful and separate blows; and that

such injuries could not be caused by an adult falling on the child. He also stated that while it was possible that the injuries were sustained according to defendant's version, it was his opinion that there was no probability that the injuries resulted from someone falling on the child. Doctor Asprinio's testimony was substantially similar to that of Dr. Paparo. He testified that in his opinion a "squashing" could not have caused the multiple injuries shown by the autopsy.

The defendant testified in his own behalf. He stated that when he brought the infant upstairs to bed, the decedent child was standing in her crib calling to him; that he started to play with her, picking her up and throwing her into the air several times; that she slipped out of his hands and fell to the floor; that he slipped and fell on top of her, squashing her as he fell; and that he then picked her up and returned the child to her crib. He admitted concealing this incident from the child's mother.

Doctor Arthur E. O'Dea, a qualified pathologist, was called as an expert witness by defendant. After stating that he had read the autopsy report he testified, in reply to a hypothetical question asked by defendant, that in his opinion the injuries recorded in the report were consistent with defendant's version of falling on the child and "squashing" her, but he admitted that the injuries were also consistent with the infliction of a severe beating.

The defendant has briefed and argued his exceptions under seven main points. We shall treat them in like manner as far as we can, but not necessarily in the same order.

Under points I and II defendant contends that under the provisions of G. L. 1956, chap. 23-4, only the chief medical examiner has authority to perform autopsies; that chap. 23-4 prescribes the prerequisites governing the admissibility of evidence obtained by an autopsy; that the state failed to prove compliance with the statute in making the autopsy; and that consequently the testimony of Dr. Paparo

based on the autopsy, and the autopsy report prepared by him, are not admissible in evidence because of such non-compliance.

These contentions lack merit. A careful reading of chap. 23-4 shows clearly that it does not apply to matters affecting the admissibility of evidence. It has no bearing on the question of the admissibility of the testimony of a medical expert who is otherwise qualified to perform an autopsy, or on the admissibility of the autopsy report prepared by such medical expert.

In any event, the instant record discloses that Dr. Paparo was authorized to perform the autopsy by Dr. James J. Flanagan, the acting chief medical examiner. There is nothing in the record indicating that Dr. Flanagan was not duly appointed or that he lacked authority to engage Dr. Paparo. In the circumstances the instant issues are governed by our decision in *State* v. *Cohen,* 93 R. I. 215, 226, 172 A.2d 737, 173 A.2d 925. The testimony of Dr. Paparo and the autopsy report were therefore admissible in evidence.

It appears from the record that a copy of the autopsy report had been given to defendant before trial; that Dr. Paparo testified to the contents thereof; and that defendant cross-examined him thereon. In such circumstances we find no prejudicial error in the ruling of the trial justice permitting the state, after it had rested, to reopen its case for the purpose of admitting the report in evidence. See *State* v. *Blood,* 70 R. I. 85, 92.

We shall next consider defendant's contention in point VI of his brief attacking the admissibility of Dr. Asprinio's testimony concerning the cause of death, the manner in which the injuries were inflicted and the time of the occurrence of the injuries. In our opinion his testimony as to what he observed at the autopsy and his opinions as a medical expert, based on such observation, were clearly admissible. The question of the weight to be given to his testimony was for the jury.

As one of the grounds on which defendant bases his exception to the denial of his motion for a new trial he contends in point III that he was deprived of a fair trial by the attitude of the state's attorney and certain remarks by him during the trial. With respect to the specific instances cited by defendant, there is nothing in the record indicating that he sought or received any ruling from the trial justice. In the absence of adverse rulings and timely exceptions thereto there is nothing for this court to review at this time. In such circumstances it must be assumed that defendant was satisfied that the comments and remarks in question did not prejudice his rights. See *State* v. *Peters*, 82 R. I. 292, 296, and *State* v. *Werner*, 87 R. I. 314.

The next ground urged by defendant relates to a series of questions to which the trial justice sustained defendant's objections. In view of the court's rulings thereon there is nothing for this court to review. There is no merit in defendant's contention that the mere asking of the questions prejudiced him and is ground for reversal. With respect to those objections which were sustained by the trial justice, there are no adverse rulings and exceptions before us.

We have carefully examined all of defendant's exceptions to evidentiary rulings in point VII and find them to be free of prejudicial error. In the circumstances we do not deem it necessary to discuss his contentions relative thereto.

In point IV defendant argues another ground under his exception to the denial of his motion for a new trial as well as his exception to the denial of his motion to discharge. The defendant did not move for a directed verdict. Instead, after the verdict he filed a motion to discharge which, as the court said in *State* v. *Cohen, supra,* is in the nature of a motion for a directed verdict. We believe that orderly procedure and practice require that we determine at this time whether such a motion has any standing in the criminal jury trial procedures of this state. The defendant has cited no decision of this court, and we have found none, passing

on a motion of that nature or approving its use in criminal jury trials.

Such a motion, like a motion to direct a verdict of acquittal, raises the question whether there is sufficient evidence in the record to support a verdict of guilty by the jury. The established practice in this state has been to raise such issue after both sides have rested but before the case is given to the jury. Under that practice a defendant obtains speedier justice if the motion to direct is decided in his favor, because it then becomes unnecessary to submit the case to the jury for their determination. We do not perceive how the addition of a motion to discharge will aid in the administration of justice in criminal jury trials. We therefore hold that such a motion has no standing in a criminal jury trial. The defendant's exception to the denial thereof is not properly before us and is therefore overruled.

Under his exception to the denial of his motion for a new trial defendant also contends that the state did not prove the corpus delicti and also failed to exclude by its evidence every reasonable hypothesis of innocence. In other words he argues that the state did not prove beyond a reasonable doubt that the child's death resulted from a criminal act and that no other reasonable hypothesis of innocence existed. He bases this contention on his claim that the state's medical experts testified that in their opinion there was a *possibility* that the injuries which caused the child's death could have happened according to defendant's version.

We cannot agree with defendant's position on this issue. While it is true that the state's medical witnesses so testified, it is clear from their testimony that in their opinion there was no *probability* that the injuries which resulted in the child's death were caused in the manner described by defendant. On that question there is no substantial dispute. We are convinced by the evidence that the child died as a result of the injuries described by the state's medical

witnesses as having occurred on March 13, 1959. The only question is whether those injuries were caused in the manner described by defendant, as supported by the opinion testimony of Dr. O'Dea, or in the manner testified to by the state's medical witnesses.

Doctors Paparo and Asprinio based their opinions as to what caused the injuries on their observation and study of the injuries at the autopsy. As was said in *State* v. *Cohen, supra*, "Admittedly opinion evidence, it was based on the observation of a trained mind and was not mere speculation." Such testimony was competent evidence for the jury to consider and weigh in passing on the question of criminal culpability. Likewise the testimony of defendant and his medical expert was for the jury to consider and weigh. In our opinion there was evidence from which they could find beyond a reasonable doubt that the child's death resulted from an unlawful act, that the defendant was connected therewith, and that no reasonable hypothesis of innocence existed.

In point V defendant argues another ground to support his exception to the denial of the motion for a new trial and also an exception to a certain portion of the instructions.

The trial justice charged that, on the basis of the evidence before them, there were four possible verdicts: Murder in the first degree, murder in the second degree, manslaughter and not guilty. In the main charge he instructed them on the law relating to such offenses and he also charged that if the jury found that the child died as a result of injuries that were accidentally inflicted upon her by defendant, it was their duty to acquit defendant. After the jury had deliberated for some time it requested the following instructions from the trial justice: "Will you please define or amplify the term 'unlawful act.' Also please define 'negligence.' Could negligence be considered as grounds for a verdict of manslaughter."

In accordance with such request the trial justice redefined manslaughter and criminal negligence. The defendant contends that the trial justice erred in his definition of criminal negligence in that he equated criminal negligence to simple negligence and that, in any event, the evidence did not warrant instructions on the question of criminal negligence or on the issue of wanton, willful or reckless disregard for the safety of others.

We do not agree with defendant's interpretation of the portion of the charge in question. While it is true that in the first paragraph thereof the trial justice is speaking in terms of simple negligence, the challenged instructions must be read together. When the two paragraphs in question are so read it is clear that the trial justice was referring to something more than simple negligence. He spoke of conduct with "indifference to consequences" and was clearly referring to conduct which was such a departure from what would be that of an ordinarily prudent or careful man in the same circumstances as to be incompatible with a proper regard for human life, or an indifference to consequences. 26 Am. Jur., Homicide, §210. In our opinion the instructions in question are not in error.

There is no merit in defendant's contention that the evidence did not warrant instructions on the question of criminal negligence. If the jury believed the testimony of the state's witnesses and disbelieved that of defendant there was sufficient evidence in the record from which the jury could reasonably have found that defendant had acted wantonly and without a proper regard for the safety of the deceased.

We come now to the defendant's contention that the verdict is against the law. He makes this contention because the jury added the words "through negligence" to their verdict of guilty of manslaughter. We are unable to agree with defendant's argument that the use of such words by the jury indicates a failure to follow the instructions of

the trial justice. On the contrary it is our opinion that the jury used those words to show that they based their verdict of manslaughter on a finding of negligence as defined by the trial justice in his instructions to them. In any event since a finding of criminal negligence is implicit in the verdict, those words are mere surplusage.

We have read the decision of the trial justice denying the motion for a new trial. We are satisfied that he performed his duty in passing on the motion and that he did not misconceive or overlook any material evidence. In passing his independent judgment on the evidence he clearly placed more weight and credibility on the testimony and exhibits presented by the state's witnesses than he did on those of the defendant. On the record before us we cannot say that he was clearly wrong.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for further proceedings.

ON MOTION FOR REARGUMENT.

NOVEMBER 9, 1961.

PER CURIAM. After our opinion in the above case was filed the defendant asked and received permission to file a motion for reargument. Pursuant thereto he has filed such a motion, setting out therein certain reasons on which he bases his contention that justice requires a reargument of the case.

We have carefully considered those reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for State.

*Thomas H. Needham,* for defendant.