COMMONWEALTH *vs.* CHRISTOPHER SCOTT & another.[2]

Suffolk. December 2, 3, 1968. — March 11, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Robbery. Common Enterprise. Practice, Criminal,* Verdict, Argument by prosecutor, Mistrial, Trial of defendants together, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Evidence,* Admitted without objection.

Conviction of two boys of robbery of an elderly woman on a sidewalk was warranted by evidence that together with a third boy the defendants trotted up behind the victim, that the third boy ran ahead of her, turned back and grabbed her handbag and was struggling with her while the defendants approached within five to seven feet of her, that she then fell to the sidewalk, the third boy took her handbag, and all three boys ran away, and that following the incident each

---

[2] Leon Meyers.

defendant was given money by the third boy, in whose home the handbag was found. [474–475]

Where it appeared that two indictments against a defendant were tried together, one charging robbery of a certain person and the other murder of that person, and that a not guilty verdict was returned on the murder indictment and a guilty verdict on the robbery indictment, the guilty verdict was not to be set aside on the ground that it was a compromise or inconsistent with the not guilty verdict, even though the same evidence was introduced in support of each indictment. [475]

At the trial of an indictment for robbery of a woman of her handbag, where there was evidence that two days after the crime the handbag was found in the basement of the house of a participant in the robbery other than the defendant by one who observed seven or eight other handbags on the basement floor, and the victim's handbag and papers therein were admitted in evidence without objection by the defendant, and he did not object when the prosecutor made allegedly improper remarks during his argument relative to the possible commission of other handbag thefts by the defendant, there was no error, in view of the judge's careful instructions, in the denial of the defendant's motions to have removed from the handbag papers not identified with the victim and for a mistrial by reason of the prosecutor's remarks. [475–476]

As to a defendant convicted with a second defendant at a joint trial for robbery, any error in admitting in evidence a pre-trial statement of the second defendant was harmless, and separate trials for the defendants were not required, where it appeared that the robbery was of a woman of her handbag, which was grabbed by a third participant in the crime, that the first defendant also made a pre-trial statement, that each statement was more favorable to the defendants than other evidence at the trial, although each statement conceded that the maker had been with the third participant before he grabbed the handbag and had received money from him after the robbery, that neither statement mentioned the other defendant by name, that the statement of the second defendant was no more damaging to the first defendant than the latter's own statement, that the two statements were not materially inconsistent or contradictory, and that the judge's instructions carefully limited the admissibility of each statement to the maker. [478]

At a criminal trial of two defendants, there was no error in admitting in evidence pre-trial statements made by the defendants in the absence of counsel while they were under arrest where findings were warranted that a card containing the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, had been read to each defendant and that the statements were voluntarily made by the defendants at a time when they understood their rights. [478–479]

INDICTMENT found and returned in the Superior Court on April 6, 1967.

The case was tried before *Smith,* J.

*Lawrence D. Shubow* for the defendant Scott.

*Walter T. Healy* for the defendant Meyers.

*William J. Doyle,* Assistant District Attorney, for the Commonwealth.

REARDON, J.    The defendants were convicted of the crime of robbery and now bring these appeals pursuant to G. L. c. 278, §§ 33A–33G, as amended.    We have before us a summary of the record, assignments of error by each defendant and a transcript of the evidence.    The defendants and one Warren Mongo were placed on trial on two indictments, one charging robbery of Mary Francis and the other charging murder of the same person.    The indictments were consolidated for trial.    The trial commenced on December 11, 1967, and consumed ten days.    On the third day of the trial Mongo pleaded guilty to second degree murder and robbery.    As to both remaining defendants, the jury returned verdicts of guilty on the robbery indictment and not guilty on the murder indictment.    The facts which could have been found by the jury are as follows.

On March 6, 1967, in the early afternoon, Mary Francis was walking on the sidewalk on Harvard Street in Dorchester. An elderly man was walking behind her.    Following him and also walking in the same direction were two girls and a boy who were the principal witnesses for the Commonwealth.    (The elderly man, Barney Sahl, was unable to testify at the trial due to illness.)

The testimony of the three principal witnesses for the Commonwealth was that they saw three boys go past them at a fast walking pace.    One of them was the defendant Scott to whom one of the girls spoke as he passed. The three boys moved on ahead together, trotting as they approached Mrs. Francis.    One of the "teenage" girls testified that she saw one of the boys run ahead of Mrs. Francis and then turn back and grab her pocketbook.    This individual was identified as Mongo.    The two boys with him proceeded to a point within five to seven feet of Mrs. Francis.    At this time Mongo was struggling with Mrs.

Francis who was then seen to fall back, her head striking the sidewalk with an impact that could be heard. Mongo took the handbag, whereupon the three boys, including Scott and a boy who resembled a photograph of Meyers, turned and ran back on Harvard Street in the direction from whence they had come. All of this happened very quickly. Mrs. Francis was taken to the Boston City Hospital where she remained with a fracture of the skull and other injuries until her death on March 14, 1967. Following this incident Mongo gave the defendant Scott a quarter and the defendant Meyers a dollar. The handbag had contained $10. On the evening of March 8, 1967, an oil burner serviceman in the cellar of the house where Mongo lived observed seven or eight handbags on the basement floor, one of which was the handbag taken from Mrs. Francis. He took this handbag, together with several papers lying on the floor, to the police. Subsequently, on March 9, 1967, Scott, Mongo and a third boy (not Meyers) were placed under arrest in Mongo's house. The defendant Meyers was not apprehended until April 12, 1967, when he surrendered at his mother's home and was placed under arrest on a murder indictment warrant.

1. We first consider the defendants' assignments of error based on the denial of their motions for directed verdicts. There was no error in the denial of these motions. The evidence summarized above permitted the inference that the two defendants, in company with Mongo, were together engaged in snatching a handbag from an aged victim. *Commonwealth* v. *Conroy,* 333 Mass. 751, 752–755, especially at pp. 754–755. In that case Conroy, a resident of Providence, Rhode Island, was present outside a restaurant in New Bedford about 4:15 A.M., a time close to that at which the jury could have found the restaurant was burglarized. The jury, from circumstantial evidence and false explanations by Conroy indicating that his presence was not innocent, were permitted to infer guilt. Common purpose may be inferred from evidence of concerted action and circumstantial evidence indicating the existence of a common

enterprise. See *Commonwealth* v. *Beal,* 314 Mass. 210, 221–224; *Commonwealth* v. *David,* 335 Mass. 686, 693–695. In the present case there was sufficient evidence adduced to permit the jury to conclude that each defendant was a participant in the robbery enterprise. See *People* v. *Marx,* 291 Ill. 40, 48–49; *State* v. *DeFalco,* 8 N. J. Super. 295, cert. den. 5 N. J. 483. Compare *Commonwealth* v. *Fancy,* 349 Mass. 196, 200. The jury were entitled to infer that each defendant was aware of Mongo's intentions and took part in framing them.

2. Each defendant argues that the verdict against him of guilty of robbery was obviously a compromise and cannot stand, and that it is inconsistent with his acquittal of murder in that if he participated in the robbery he was guilty of a felony murder. That breed of "inconsistent" verdicts which is not allowed to stand under our cases is small indeed and is best illustrated by *Commonwealth* v. *Haskins,* 128 Mass. 60, a case where the defendant was found guilty both of larceny and of receiving stolen goods. However, the rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury. *Commonwealth* v. *McCarthy,* 348 Mass. 7, 14. *Dunn* v. *United States,* 284 U. S. 390, 393–394. See *Borum* v. *United States,* 284 U. S. 596. It was not necessary that the verdicts be consistent on the separate indictments. As was pointed out in the *Dunn* case, that the same evidence was offered in support of each indictment would not permit an acquittal on one to be pleaded as res judicata of the other.

3. The defendant Scott in his assignment No. 4 alleges that the court erred in denying his motion for a mistrial and in failing to order removal of certain papers from an exhibit because of the prosecutor's allegedly improper remarks during argument relative to the commission of collateral crimes. These papers were contained in the victim's pocketbook found by the oil burner serviceman. In argument, allusion was made by the prosecutor a number of times to the possi-

bility that the defendants had stolen the other pocketbooks found near that of the victim and that conceivably on this occasion it was the turn of Mongo to retain the major proceeds of the crime. Prior to instruction of the jury the defendant Scott moved to have removed from the pocketbook the papers not identified with the victim, and based his motion for mistrial on the prosecutor's allegedly prejudicial remarks. Both motions were denied.

At the time the pocketbook was admitted in evidence with the papers, the defendant Scott did not object to its admission and, hence, cannot now be heard to complain. *Commonwealth* v. *Doyle*, 323 Mass. 633, 634–635. *Commonwealth* v. *Theberge*, 330 Mass. 520, 527. The judge gave careful instructions that only items identified with the victim could be considered by the jury in their deliberations.

When the prosecutor made the alleged prejudicial remarks during his argument, the defendant Scott did not object, and furthermore the judge in his charge warned the jury to disregard the remarks of the district attorney relative to any other possible crimes. It is our view that the instruction, phrased as it was, amply covered the lapses of the prosecutor's argument. Certainly the judge gave sufficient emphasis to what he had to say about these items to make it clear to the jury what they should and should not consider relative to (a) the contents of the pocketbook, and (b) other handbag snatching incidents in which the prosecutor said the defendants might have engaged.

4. The defendant Meyers argues, largely on the basis of *Bruton* v. *United States*, 391 U. S. 123, that the defendants should have been afforded separate trials in view of the inculpatory statement given by Meyers' codefendant which incriminated him.

The *Bruton* case, which was decided on May 20, 1968, five months after the trial of this case, is applicable retroactively to State as well as Federal trials. *Roberts* v. *Russell*, 392 U. S. 293.

This case, unlike the *Bruton* case, does not involve the inculpation by one defendant of a codefendant who stands

silent.   Here each defendant made a statement.   Neither statement, at least with respect to the actual events on the street, was more damaging than evidence obtained from other sources.   In some respects the statements were more favorable to these defendants than other testimony.   Each statement did concede that the defendant making it had been with Mongo before the assault.   Each defendant admitted that he had received a small sum of money from Mongo after the robbery.   Neither statement mentioned the other defendant by name.   Meyers himself had given a statement indicating his involvement in the events surrounding the crime.   Scott's statement was no more damaging to Meyers than Meyers' own statement.   There are only slight inconsistencies in the stories as they relate to the defendant Meyers.   Scott says that he and "Mr. X" (obviously Meyers) were sleeping at Mongo's house whereas Meyers says he came to Mongo's house the afternoon of the crime. This apparent inconsistency is eliminated by understanding Meyers to mean that he came to Mongo's house that afternoon, dozed for awhile, and left with the other two boys. Only Scott mentions that the boys were running at some point before Mongo took the bag.   But Scott says that he and Meyers stopped before the robbery was committed. Scott in no way contradicts Meyers on the important assertion that Meyers was forty feet away from the victim when she was assaulted.   Meyers insists that he did not run *with* the other two boys after the crime but rather ran elsewhere. Scott's statement ("Myself and Mr. X and Warren Mongo started running. . . .   Q. In what direction . . .?   A. Towards Lorne Street.   Q. At this time there was Mr. X, . . . Mongo, and yourself?   A. Yes") may, by a strained reading, be read to contradict Meyers on that point, and Scott does say "We" asked Mongo how much he got after the crime.   A fair reading of Scott's statement, however, would not indicate any prejudicial contradiction of Meyers' statement.

By reason of his own admission of the essential facts of each statement, no practical risk was created that the jury

would improperly use against one defendant statements of another defendant. We recognize that the majority opinions in the *Bruton* case (391 U. S. 123–138) were placed on very broad grounds. Nevertheless, the Supreme Court had before it a confession by only one of two defendants jointly tried which implicated the other defendant. Neither statement in the present case implicates the other defendant in any material respect which he has not himself admitted. If there was error (under the novel *Bruton* doctrine which the trial judge had no reason to anticipate) in admitting the statements (with cautionary instructions that each was admissible only against the defendant making it), it was, in our opinion, harmless. Compare *Chapman* v. *California*, 386 U. S. 18, 24–26.

Although we conclude that there was no reversible error in failing to sever the trials in this case tried long before the *Bruton* decision, we think that prosecutors should consider whether to introduce statements of individual defendants in joint trials or rather to refrain from doing so or to consent to severance of the trials. Any other course involves serious risk that the trials will have been futile. See *United States* v. *Bozza*, 365 F. 2d 206, 217 (2d Cir.).

5. Both defendants have alleged error in that they were not given appropriate warnings under *Miranda* v. *Arizona*, 384 U. S. 436. Specifically, Scott argues that he was not warned of his right to have an attorney in consultation prior to the time that he was questioned. It is in evidence, however, that the so called *Miranda* card, containing the warnings prescribed by that case, was read to him upon his arrest, and the card which is in evidence includes the particular warning which he claimed he was not given. The judge could find that the *Miranda* requirements were met.

Meyers argues that since he was under indictment when he was arrested, questioning him in the absence of an attorney was unlawful. While he alleges that he was never told of his right to counsel, there is ample testimony to the contrary, with Meyers and his mother admitting that "a

card" was read. The judge could have found that Meyers received sufficient warning.

On the assumption that they were warned, both defendants claim a lack of understanding of their rights. On examination of the evidence we agree with the findings of the judge to the effect that the statements were voluntarily made by the defendants at a time when they understood their rights.

One further observation may be made. In this matter approximately one half the trial time which consumed over ten days was absorbed in the taking of testimony relative to the warnings given to the defendants under the *Miranda* case. This transcript, containing 1,004 pages of evidence, 500 pages of which relate to *Miranda* warnings, is amply demonstrative of the reason why there is heavy and constantly increasing congestion in the jury trials of criminal causes.

*Judgments affirmed.*