THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ROBERT LEE GRANT, Appellant.

Second Department, December 16, 1985

APPEARANCES OF COUNSEL

*Harvey L. Woll* for appellant.

*John J. Santucci, District Attorney (Gary S. Fidel* of counsel), for respondent.

## OPINION OF THE COURT

LAWRENCE, J.

■ The instant appeal, in which defendant challenges his conviction for robbery in the second degree and other related offenses, presents for our consideration the issue of whether the admission into evidence of statements made by the robbery victim, who did not testify at the defendant's trial, violated the defendant's right "to be confronted with the witnesses against him" (US Const 6th Amend; NY Const, art I, § 6). We conclude that the victim's statements were properly admitted into evidence and since no other grounds have been presented warranting a reversal of the conviction, there should be an affirmance.

The facts of this case were testified to by Police Officers John Tierney and John Byrnes, Police Lieutenant Austin Kelly and Michelle Fuchs, the medical records director at Flushing Hospital Medical Center.

At approximately 8:15 P.M. on February 16, 1981, Tierney, Byrnes and Kelly, members of the Street Crime Unit, were on patrol in an unmarked police car in the 109th Precinct in Queens. As they traveled in their car, on 41st Avenue, the officers, who were in plain clothes, noticed a man, later identified as the defendant, standing behind the gate of a schoolyard in a crouched position. Tierney exited the car and hid behind a stack of bricks at a construction site across the

street from the schoolyard area, which was illuminated by streetlights and spotlights. Subsequently, a woman, later identified as Pastora Molina, was seen by the officers walking along the schoolyard block, carrying bags of groceries and a pocketbook. From his position across the street, Tierney saw the defendant approach Molina, grab her from behind, throw her down onto the sidewalk, and then struggle with Molina for her pocketbook. Tierney, with his gun drawn, yelled, "[P]olice, don't move". The defendant immediately fled, with Tierney in pursuit, through an alleyway and down a flight of stairs to Barclay Avenue.

At that time, Kelly, who had also witnessed the purse-snatching, exited the police vehicle, ran through the schoolyard next to the alleyway and apprehended the defendant as he emerged from the alleyway onto Barclay Avenue. The defendant was carrying the pocketbook. The pocketbook and its contents, including $12 and a Social Security card bearing the name Pastora Molina, were introduced into evidence.

Approximately two minutes after the defendant was apprehended, Molina arrived at the arrest scene and, without being questioned by the officers, she stated, in substance "that's my pocketbook", and "[the defendant] took my pocketbook".[1]

The officers further testified that they observed that the fingers of one of Molina's hands were disfigured. The records of Flushing Hospital, which were admitted into evidence, indicated that on February 16, Molina was treated for two dislocated fingers; she required a cast for her hand and reconstructive surgery was recommended.

Prior to the trial court's charge to the jury, defense counsel's motion for a trial order of dismissal, based, *inter alia,* on the ground that defendant was denied his constitutional right to confrontation since Molina did not testify at the trial, was denied. Thereafter, the jury acquitted defendant of robbery in the first degree, but convicted him of robbery in the second degree, grand larceny in the third degree and criminal possession of stolen property in the third degree.

In seeking reversal of his conviction, defendant contends that Molina's statements, as testified to by the police witnesses, should not have been admitted into evidence because they were inadmissible hearsay declarations of questionable

---

1. Defense counsel objected to the admission into evidence of Molina's statements as related by Police Officer Tierney and Police Lieutenant Kelly, but made no objection to Police Officer Byrnes' similar testimony.

accuracy. It is further contended that since Molina did not testify at the trial, the use of her out-of-court accusations violated the defendant's constitutional right of confrontation. We disagree.

Molina's statements were properly admitted into evidence under the spontaneous declaration or excited utterance exception to the hearsay rule.

In determining whether a statement qualifies as a spontaneous declaration or excited utterance, the Court of Appeals has set forth the following guidelines: "[T]he court must ascertain whether, at the time the utterance was made, the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful. The court must assess not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth. Above all, the decisive factor is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection" *(People v Edwards,* 47 NY2d 493, 497).

Applying these factors to the instant case, we find no error in the admission of the statements. A review of the record indicates that Molina's statements were made minutes after she had been attacked and robbed of her pocketbook. Under the circumstances, Molina's statements "were uttered when emotional excitement continue[d] to dominate and [her] reflective powers [were] still in abeyance" *(People v Edwards, supra,* at p 498; *see also, Matter of Lydia K.,* 112 AD2d 306, *lv granted* 66 NY2d 604 [paramedic allowed to testify that 4 to 7 minutes after the victim, a seven-year-old child, fell out of a window, the child told him that her mother pushed her out of the window]). Furthermore, the fact that Molina saw the defendant, the man who robbed her, at the arrest scene only minutes after the incident is independently a startling event which rendered her statements admissible as spontaneous declarations or excited utterances *(see, Matter of Danny R.,* 50 NY2d 1026, 1028 [arresting officer permitted to testify that the victim screamed " 'That's him' " when the officer brought the defendant back to the scene of the robbery]).

We find no merit to defendant's claim that the testimony of the police witnesses in this case violated the rule set forth in

*People v Trowbridge* (305 NY 471; *cf. Matter of Danny R., supra).*

Having concluded that Molina's statements were admissible under the spontaneous declaration or excited utterance exception to the hearsay rule, we now consider whether the use of the statements deprived the defendant of his constitutional right to confront the witnesses against him.

In determining the issue of the defendant's right of confrontation, we must consider whether the prosecutor satisfied the twofold test set forth in *Ohio v Roberts* (448 US 56). This approach was adopted by our Court of Appeals in *People v Sanders* (56 NY2d 51), where, as in this case, the "defendant has not advanced any reason which would cause [this court] to recognize a State constitutional right of confrontation broader than the Sixth Amendment guarantee as interpreted by the Supreme Court" *(People v Sanders, supra,* at pp 64-65).

As delineated by the Supreme Court in *Ohio v Roberts (supra),* in the usual case, the People must establish that the hearsay declarant is unavailable at the time of the trial and that the statement bears indicia of reliability sufficient to " ' "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement" ' " *(Ohio v Roberts, supra,* at pp 65-66, quoting from *California v Green,* 399 US 149, 161, *supra).*[2]

With respect to establishing the unavailability of a witness, the People must prove that they have made a " 'good-faith effort' " to obtain the hearsay declarant's presence at the trial *(Ohio v Roberts, supra,* at p 74, quoting from *Barber v Page,* 390 US 719, 725; *see also, People v Sanders, supra,* at p 64). The extent to which the prosecution must go to satisfy the requirement that a good-faith effort be made to produce a witness " 'is a question of reasonableness' " *(Ohio v Roberts, supra,* at p 74, quoting from *California v Green, supra,* at p 189, n 22 [concurring opn citing *Barber v Page, supra]).* Even if the prosecution sufficiently proves that a good-faith effort has been made, albeit unsuccessfully, to produce the witness, the hearsay statement will only be admissible if it bears sufficient " 'indicia of reliability'. Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception" *(Ohio v Roberts, supra,* at p 66).

---

2. The court in *Ohio v Roberts* (448 US 56, 65, n 7) indicated that under certain circumstances, not present herein, a demonstration of unavailability is not always required.

In the instant case, a review of the record indicates that the prosecution satisfied its burden of establishing that it had made a good-faith effort to locate Molina. Initially, there was no indication that she would not testify at the trial until after the trial had already commenced on Tuesday, February 2, 1982. On February 2 and 3, 1982, a jury was impaneled. On Thursday, February 4, 1982, defendant was granted a one-day adjournment; at that time the prosecutor stated that he had been informed that Molina was at "Con Ed" trying to prevent the electricity in her home from being shut off. On Friday, February 5, prior to the trial court's preliminary instructions to the jury, the prosecutor told the trial court that a message had been left with Molina's daughter instructing Molina to be at the courthouse that morning at 9:00 A.M. He added that detectives from the District Attorney's office had been sent to Molina's apartment in an attempt to find her and that he would proceed with other witnesses. Later that day, the prosecutor explained that on Thursday, February 4, his office had telephoned Molina. Her daughter answered and stated that she did not know where her mother was, that she "thought she's going to Con Ed but thought that she had gone [the] day before". On the morning of February 5, a Spanish-speaking investigator from the District Attorney's office, with a subpoena, went to the apartment; he received no answer when he rang the doorbell. The District Attorney's office again telephoned the Molina home. A person answered in broken English, and when the caller identified himself as from the District Attorney's office, the listener hung up. Thereafter, the District Attorney's Spanish-speaking investigator consulted the building superintendent; when the superintendent rang Molina's doorbell, someone answered but refused to open the door. The person inside the apartment stated that Molina had left early in the morning and she did not know where she had gone. The subpoena was then slipped under the door. Upon the aforementioned facts, the People's subsequent application for a material witness order was granted by the trial court on February 5. Thereafter, on Monday, February 8, the prosecutor informed the trial court that investigators had attempted to enforce the material witness order, but were unsuccessful. Specifically, the investigators had visited the Molina apartment from 7:30 to 9:30 that morning. There was no indication that anyone was in the apartment, no one answered the telephone or the door, and there was no noise inside the apartment.

Under the circumstances, as disclosed by this record, we find that Molina's unavailability was sufficiently established by the prosecution *(see, Ohio v Roberts, supra; cf. People v Arroyo,* 54 NY2d 567, *cert denied* 456 US 979).

Furthermore, "the circumstances surrounding [Molina's] statements provided the jury with the 'indicia of reliability' necessary for a proper evaluation of the truth of these declarations even without the aid of cross-examination" *(People v Sanders,* 56 NY2d 51, 65, *supra).* As noted, Molina's statements qualified as spontaneous declarations or excited utterances, "[o]ne of the better-known exceptions to the injunction against the reception of hearsay testimony" *(People v Edwards,* 47 NY2d 493, 496, *supra).* The statements were clearly uttered almost immediately after the suddenness of the purse-snatching, "thus ensuring the spontaneity of the utterance[s]" *(People v Edwards, supra,* at p 498). "[S]tatements admitted pursuant to [this exception] derive their vitality not from the veracity of the declarant, but rather from their relation to the transaction from which they spring" *(People v Edwards, supra,* at p 496). Further, "[e]vidence, independent of the statements themselves, verified that the startling events had actually occurred" *(People v Edwards, supra,* at p 498).

Thus, we conclude that the admission into evidence of Molina's statements did not violate defendant's constitutional right of confrontation.[3]

Even if Molina's statements were not properly admitted into evidence, the error was harmless beyond a reasonable doubt. In the instant case, apart from Molina's statements, the evidence of the defendant's guilt was overwhelming. Both Tierney and Kelly testified that they saw the defendant struggle for and eventually obtain the pocketbook being held by Molina. Tierney did not lose sight of the defendant at anytime prior to the defendant's arrest and apprehension by Kelly, at which time the defendant was still carrying the pocketbook in his arms. Thus, there is no reasonable possibility that the admission of the statements, if error, contributed to the defendant's conviction *(see, People v Crimmins,* 36 NY2d 230, 237).

---

3. As noted by the Court of Appeals in *People v Sanders* (56 NY2d 51, 64) with respect to the coconspirators' exception to the hearsay rule, which is equally applicable herein, "we need not and do not adopt in this case a rule by which every extrajudicial statement qualifying under [the spontaneous declaration or excited utterance] exception to the hearsay rule is admissible at a criminal trial notwithstanding the constitutional right of confrontation".

One other contention raised by the defendant in support of reversal warrants further discussion. He argues that he was improperly convicted of both robbery in the second degree and criminal possession of stolen property in the third degree.

■ Prior to September 1, 1976, an individual could not be convicted of both larceny and criminal possession of stolen property with respect to the same property (see, Penal Law § 165.60 [former 2]; *People v Coleman*, 54 AD2d 1076; *People v Gruttadauria*, 52 AD2d 893, 894; *Matter of Jerry H.*, 49 AD2d 925). However, in 1976, the Legislature amended Penal Law § 165.60 eliminating the proscription against convictions for both larceny and criminal possession of stolen property for acts committed on or after September 1, 1976 (Penal Law § 165.60 [2], as amended by L 1976, ch 375, § 1; *see*, Hechtman, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 165.60 [1984-1985 Pocket Part], p 145). Since at the time of the instant offense there was no statutory prohibition against convicting a defendant of both the crime of larceny and the crime of criminal possession of stolen property with respect to the same property, defendant's convictions of both robbery in the second degree (of which larceny is an element), and criminal possession of stolen property in the third degree should stand (see, *People v Short*, 69 AD2d 985). To the extent that dictum in *People v Jones* (80 AD2d 876) is to the contrary, we decline to follow it.

The other contentions raised by the defendant are either without merit or unpreserved for our review. We decline to review the unpreserved issues as a matter of discretion in the interest of justice.

Accordingly, the judgment of conviction should be affirmed.

GIBBONS, J. P., O'CONNOR and NIEHOFF, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered March 5, 1982, affirmed.