COMMONWEALTH *vs.* ANDRES F. CARTAGENA.

No. 91-P-349.

Hampden. January 10, 1992. - February 14, 1992.

Present: FINE, JACOBS, & PORADA, JJ.

*Evidence*, Hearsay, Common criminal enterprise, Cumulative. *Joint Enterprise. Practice, Criminal*, Instructions to jury.

At the trial of two defendants for trafficking in cocaine the judge properly allowed in evidence certain hearsay statements of one defendant implicating the other defendant where the statements were made during the course of and in furtherance of a common criminal enterprise, and the nonhearsay testimony was sufficient to give rise to an inference that the second defendant not only was present but was a participant in the criminal venture. [143-144]

At the trial of indictments for trafficking in cocaine, no substantial risk of a miscarriage of justice was created by the judge's failure to instruct the jury with respect to the use of hearsay statements of one defendant that implicated the other defendant, in circumstances where there was considerable compelling nonhearsay evidence of the second defendant's participation in the criminal enterprise. [144-146]

At a criminal trial, evidence admitted with respect to the defendant's alleged ownership of certain property, if improper, was irrelevant to the issues on trial and did not constitute reversible error. [146]

At a criminal trial, a single improper question by the prosecutor, referring to a previous narcotics investigation allegedly involving the defendant, the answer to which was struck on motion of defense counsel, did not, in the circumstances, create a substantial risk of a miscarriage of justice. [146-147]

INDICTMENT found and returned in the Superior Court Department on March 23, 1988.

The case was tried before *John F. Murphy, Jr.*, J.

*Margaret Helen Carter* for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant and one Julian Sarabaez were convicted by a jury of trafficking in cocaine. On appeal, the de-

fendant claims, first, that the Superior Court judge erred in admitting Sarabaez's hearsay statements implicating the defendant as the supplier of the drugs; second, that the judge failed to instruct the jury with regard to the use of those statements; third, that the judge improperly allowed testimony that the defendant owned the USA gym; and, fourth, that the jurors were improperly exposed to prejudicial information concerning earlier narcotics investigations. We conclude that there was no reversible error and, therefore, we affirm the conviction.

1. *Admission of codefendant's hearsay statements.* The . judge held a preliminary hearing to determine whether Sarabaez's hearsay statements could be used against the defendant. At that hearing, Detective Louis Rodriguez, an undercover member of the Western Massachusetts Narcotics Task Force, testified that at around 4:00 P.M. on February 3, 1988, he and Sarabaez met in Westfield to discuss the purchase of one and a half ounces of cocaine. Sarabaez told the detective that he would be able to obtain the drugs within an hour. When Detective Rodriguez and Sarabaez met later that afternoon, a price of $2,800 was set and arrangements for the exchange were made. At around 6:15 P.M., Detective Rodriguez and Sarabaez met again and drove to the USA gym. Sarabaez entered the gym, came out a few minutes later, and said that he had spoken with the supplier. When Detective Rodriguez asked Sarabaez whether the supplier worked at the gym, Sarabaez replied that the supplier owned the gym and used it as a front for the profits from his cocaine operation.

After they waited about ten to fifteen minutes, Sarabaez left to make a phone call. Upon his return, he reported to Detective Rodriguez that the supplier would meet them at the Burger King parking lot on Main Street. Detective Rodriguez told Sarabaez that he only had $1,900 and wanted to make a new deal for that amount. Sarabaez agreed to try. They proceeded to the Burger King parking lot. At around 7:00 P.M., a yellow IROC Camaro automobile pulled up behind Detective Rodriguez's car in the Burger King parking

lot. Sarabaez told Detective Rodriguez that the driver of the Camaro was the supplier and asked for the money. Detective Rodriguez handed the money to Sarabaez. Detective Rodriguez watched Sarabaez as he spoke to the driver of the Camaro and handed him the money. When Sarabaez returned to Detective Rodriguez's car, he stated that the supplier would recut the cocaine and deliver one ounce for $1,900 at the parking lot of Rocky's Hardware Store, also on Main Street. About a half hour later, a Dodge Swinger automobile entered that lot, where Sarabaez and Detective Rodriguez were waiting. Sarabaez walked over to the Dodge, was handed a package containing one ounce of cocaine, and returned to Detective Rodriguez's car. The defendant was not among those in the Dodge.

Officer Robert Schultz, also a member of the Narcotics Task Force, testified that he conducted a surveillance of Detective Rodriguez and Sarabaez during the day's events. Officer Schultz identified the defendant as the driver of the Camaro at the Burger King parking lot. He further testified that he knew that the defendant was the owner of the USA gym, but he did not explain the basis of his knowledge.

After hearing the testimony of Detective Rodriguez and Officer Schultz, the judge found that the Commonwealth had established a prima facie showing of a joint venture and that the hearsay statements in issue were made during the course of and in furtherance of the joint venture. The judge made a preliminary ruling that Sarabaez's hearsay statements implicating the defendant as the supplier would be admissible against the defendant. At trial, Detective Rodriguez and Officer Schultz repeated the testimony offered at the preliminary hearing, but in somewhat greater detail.

The judge's preliminary ruling on admissibility was correct. Hearsay statements of one made outside the presence of a criminal defendant may be admitted against that defendant if they were made during the course of and in furtherance of a common criminal enterprise (whether a conspiracy or a joint venture) and if there is sufficient nonhearsay evidence to establish "an adequate probability" that the declar-

ant and the defendant were engaged in the criminal enterprise. *Commonwealth* v. *White*, 370 Mass. 703, 709 n.7 (1976). See *Commonwealth* v. *Beckett*, 373 Mass. 329, 337 n.3 (1977); *Commonwealth* v. *Soares*, 384 Mass. 149, 159 (1981). " 'In making this determination, the conspiracy may be, and usually is, proved by circumstantial evidence.' *Commonwealth* v. *Stasiun*, 349 Mass. 38, 50 (1965)." *Commonwealth* v. *Soares*, 384 Mass. at 159.

Given the visit to the gym and the phone calls in the course of making arrangements for the drug buy, it was a reasonable inference that Sarabaez was not working alone in the effort to deliver the cocaine. Nonhearsay testimony from Officer Schultz and Detective Rodriguez, in combination, adequately linked the defendant to that effort. According to their testimony, the defendant appeared in the parking lot where Detective Rodriguez and Sarabaez, by prearrangement, were waiting for the drugs and parked directly behind Detective Rodriguez's car; Sarabaez took the $1,900 purchase money from Detective Rodriguez, walked towards the defendant's car, and handed it to the defendant; Sarabaez spoke with no one else after making a new deal for delivery of drugs for $1,900; and only a short while later, consistent with that new deal, one ounce of drugs was delivered. Viewed in the light most favorable to the Commonwealth, this testimony was sufficient to give rise to an inference that the defendant not only was present at a crucial point in the criminal venture, but also was a participant. The defendant does not argue on appeal, nor could he do so persuasively, that, if the showing of participation in the enterprise was established, the statements were not in furtherance of that enterprise.

2. *Jury instructions.* When hearsay statements of an alleged joint venturer are to be used against a defendant, the jury should be instructed that they may consider the statements only if they determine on the basis of independent nonhearsay evidence that a joint venture existed. See *Commonwealth* v. *Beckett*, 373 Mass. at 340; *Commonwealth* v. *Soares*, 384 Mass. at 159-160. In this case, the judge gave

standard instructions on the requirements for proving a joint venture. No request was made, however, that he discuss the use of the hearsay statements made by Sarabaez, and no such instruction was given. Instead, the judge told the jurors generally, "Almost all the evidence in the case was admitted generally which means you can make whatever use of it you wish." Given that general instruction and the lack of specific limiting instructions, the jury reasonably could have assumed that they could use the hearsay statements as direct evidence of the defendant's guilt without first finding, on the basis of nonhearsay evidence, that a joint enterprise existed. Since the defendant raises the issue for the first time on appeal, we evaluate whether the error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Silva*, 401 Mass. 318, 328-329 (1987).

As we have said, the ruling allowing the jury to hear the hearsay evidence was proper. The required instruction is technical in nature and offers at least some potential for confusing a jury or being given little heed. There was, as we have indicated, considerable, indeed compelling, nonhearsay evidence of the defendant's pivotal role in the transaction. In Sarabaez's far-fetched account of the incident on the witness stand, on which the defendant relied in closing argument, much of that nonhearsay evidence was actually confirmed. Sarabaez admitted that he had named the defendant as his source to Detective Rodriguez but claimed that he did so only to protect his real source, Ramon Gonzalez Garcia (Gonzalez), and to convey the impression that he was associated with "somebody strong." Sarabaez confirmed that he and Detective Rodriguez had driven to the USA gym and that he went inside to make arrangements for the drug transaction. Sarabaez testified that the defendant approached him and asked what he was doing in the gym. Sarabaez replied that he wanted to borrow fifty dollars to buy sneakers so that he could continue to use the gym. The defendant gave Sarabaez fifty dollars and then returned to his office. Sarabaez then spoke briefly to Gonzalez, his source, and left

the gym. Sarabaez confirmed that the defendant arrived at the Burger King parking lot when Gonzalez was expected, but called it a coincidence. He also confirmed that when he saw the defendant drive up, he told Detective Rodriguez that the source had arrived. Sarabaez confirmed that the defendant beckoned him to the car, but he testified that he jumped in the passenger side to explain to the defendant why he was in the parking lot and not out buying sneakers. He claimed not to have given Detective Rodriguez's money to the defendant. According to Sarabaez's testimony, Gonzalez was also at the Burger King parking lot, but he gave no money to Gonzalez either at Burger King or at Rocky's Hardware, where Gonzalez delivered the cocaine. Sarabaez stated that Gonzalez was willing to sell the drugs on credit.

We consider it extremely unlikely, in the circumstances, that a correct instruction on the use of the hearsay evidence would have affected the outcome of the case. There is, thus, no substantial risk of a miscarriage of justice.

3. *Ownership of the USA gym.* During the prosecutor's direct examination of Officer Schultz, numerous attempts were made to elicit evidence that he knew that the defendant was the owner of the USA gym. Finally, the judge permitted Officer Schultz to testify, over objection, that in 1987 the defendant purchased the gym. For purposes of our discussion, we assume that an adequate foundation for that testimony had not been laid, and the defendant's objection should have been sustained. Reversal is not required, however. Nothing in the case turned on actual ownership of the gym. Instead, the issue was whether it was the defendant to whom Sarabaez was referring when he told Detective Rodriguez that his supplier was the owner of the gym. In his own testimony, Sarabaez made it clear that he believed the defendant to be the owner of the gym and that he was referring, in his statements, to the defendant. Officer Schultz's testimony to similar effect, therefore, was merely cumulative and not prejudicial.

4. *Evidence of prior narcotics investigations.* In the course of attempting to lay a foundation about the defendant's own-

ership of the gym, the prosecutor engaged in the following colloquy with Officer Schultz:

> Q. "Did you ever have any direct contact with [the defendant]?"
> A. "Yes."
> Q. "Pursuant to a previous investigation, sir?"
> A. "Yes."
> Q. "With respect to that investigation, sir, was that an investigation involving narcotics?"
> A. "Yes, it was."

Defense counsel's objection to the reference to an investigation involving narcotics was sustained. Counsel moved that the answer be struck, and the judge responded, "It's stricken, ladies and gentlemen." Nothing further was said during the remainder of the trial about the matter. The Commonwealth concedes that the form of the question was improper. The defendant contends that merely sustaining the objection and striking the evidence were insufficient. A forceful curative instruction, although not requested, would have been appropriate. On the record as a whole, however, we think that any oversight was unlikely to have affected the outcome and, therefore, did not create a substantial risk of a miscarriage of justice.

*Judgment affirmed.*