COMMONWEALTH *vs.* WARREN NASCIMENTO.

Bristol. October 4, 1995. - January 12, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, GREANEY, & FRIED, JJ.

*Larceny. Receiving Stolen Goods. Joint Enterprise. Evidence,* Joint enterprise, Hearsay. *Practice, Criminal,* Instructions to jury, New trial.

At a criminal trial, the judge correctly ruled that the police had probable cause to arrest the defendant and had lawfully seized certain evidence during the search incident to the arrest. [679-680]

At a criminal trial, the judge correctly admitted in evidence a hearsay statement of a joint venturer, where the statement was made during the course of and in furtherance of a common criminal enterprise and where there was adequate evidence that the defendant and the declarant were engaged in the enterprise. [680-681]

At a criminal trial, the judge's failure to instruct the jury how they should treat a certain hearsay statement admitted in evidence did not create a substantial risk of a miscarriage of justice, where the hearsay remark could not, in the circumstances, have had a controlling role in the proof of the crimes charged. [681-682]

Evidence at the trial of felony indictments warranted the judge's instruction to the jury that the defendant could be guilty of the crimes charged on the theory of joint venture. [682]

Where at a criminal trial, without proper instructions, the jury returned inconsistent verdicts of guilty of both larceny of certain property and receiving the same stolen property, and where the evidence was sufficient, on proper instructions, to warrant a finding beyond a reasonable doubt of each element of the larceny, the judge appropriately, in the circumstances, dismissed the indictment for receiving stolen property and let stand the conviction of larceny. [682-685]

INDICTMENTS found and returned in the Superior Court Department on January 24, 1990.

Motions to suppress evidence were heard by *Gerald F. O'Neill, Jr.,* J.; the cases were tried before *Cortland A. Mathers,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen J. Weymouth* for the defendant.

*David B. Mark,* Special Assistant District Attorney, for the Commonwealth.

WILKINS, J. We consider the defendant Warren Nascimento's appeal, which we transferred here on our own motion, from convictions relating to (a) breaking and entering the Freetown dwelling house of Lionel Aubut on January 5, 1990, and (b) kidnapping, shooting, and robbing Francis Butts in Fall River a few days later.[1] None of the defendant's arguments requires reversal of any conviction challenged on appeal.

We set forth the basic facts on which the convictions rested, leaving certain details to our discussion of specific issues. We conclude that the evidence was sufficient to justify the denial of the defendant's motion for a required finding of not guilty as to each charge. We shall not discuss that issue further.

On January 5, 1990, firearms, money, and other items were stolen from the home of Lionel Aubut in Freetown. The defendant and Doreen Banville had indicated a few days earlier that they wanted a ride to Freetown from Fall River because Banville knew where she could get a gun. Banville and her family had once lived with Aubut. After the burglary, the defendant was seen with items taken from Aubut's home.

On January 8, not long after midnight, Butts gave a ride to a man and a woman, whom Butts knew was named Doreen. They asked him to drive them to a local motel. Before they reached the motel, the man ordered Butts at

---

[1]The defendant was convicted of (a) breaking and entering the dwelling house of Lionel Aubut in the daytime with intent to commit larceny, (b) larceny of Francis Butts's motor vehicle, (c) armed assault with intent to murder Butts, (d) kidnapping Butts, (e) armed robbery of Butts, and (f) receiving property stolen from Butts. The judge subsequently dismissed the indictment for receiving stolen property at the prosecutor's request. The question whether that dismissal was an adequate cure for the inconsistent verdicts (both stealing property and receiving the property knowing it to be stolen) presents the only issue in this case of general application.

gunpoint into the back seat of the vehicle. Later the man forced Butts into the trunk. A few hours later Butts was ordered out of the trunk in the Freetown-Fall River State forest and shot three times in the back of his head. Butts had $2,300 in his pants, two rings, and a wrist watch. A couple walking their dogs in the forest found Butts later that day.

The next day police in Dartmouth arrested the defendant in Butts's stolen vehicle and found Butts's watch and rings in the defendant's pants pocket. Banville was driving the stolen vehicle when the defendant was arrested. On the previous night, after the shooting, the defendant and Banville had also been seen together. The evidence warranted a reasonable inference that the defendant was the man who had participated with Banville in the kidnapping, robbery, and shooting of Butts.

1. Because the Dartmouth police had probable cause to arrest the defendant, the judge properly denied the defendant's motion to suppress evidence seized during the search incident to the defendant's arrest.

The motion judge's unchallenged findings of fact support his ruling that the police had probable cause to arrest the defendant. Early in the afternoon of January 8, 1990, two people walking their dogs in the Fall River Reservation found Butts, lying unconscious, apparently shot in the base of the skull. Butts wore no jewelry, had no cash other than change, and had no car keys (except for a spare key in his wallet). The police could not locate Butts's vehicle at any of the places that Butts frequented. A police bulletin was issued later that day precisely describing Butts's motor vehicle, which the police had determined was missing. The police had learned that Butts never loaned his vehicle to anyone and that, on the previous day, the victim had been carrying a large sum of money.

Later on January 8, a Dartmouth police officer saw Butts's vehicle in front of a motel and learned that the vehicle was associated with a motel room registered to the defendant. The officer reported that information to the Fall River police who knew that the defendant had a long record of crime,

including convictions for armed robbery and assault with intent to kill. When the defendant and Doreen Banville left the motel in the stolen vehicle, police officers arrested the defendant for receiving stolen property and larceny. The police search of the defendant followed.

These facts were sufficient to warrant a person of reasonable caution to believe that the defendant had stolen the victim's vehicle or had received stolen property. *Commonwealth v. Crawford*, 410 Mass. 75, 78 (1991), *S.C.*, 417 Mass. 40 (1994). The information that the Fall River police transmitted concerning the stolen vehicle was based on reliable information. See *United States v. Hensley*, 469 U.S. 221, 231 (1985); *Commonwealth v. Antobenedetto*, 366 Mass. 51, 56 (1974). Cf. *Commonwealth v. Cheek*, 413 Mass. 492, 494-495 (1992). That information and other facts about the vehicle's connection with the defendant had been gathered by the collective efforts of Fall River and Dartmouth police officers. See *Commonwealth v. Gullick*, 386 Mass. 278, 283 (1982).

2. The judge properly admitted a hearsay statement that Banville made to the defendant's former wife early in January, 1990, before the burglary of the Aubut home in Freetown, when Banville and the defendant visited his former wife in her Fall River home. When the defendant's former wife was asked to recite the conversation, defense counsel objected. He conceded that any statement by the defendant would be an admission and thus not subject to a hearsay objection, but argued that there was no evidence of a joint venture that would justify admission of Banville's hearsay statement. The judge overruled the objection. The defendant's former wife then testified: "They needed a ride to Freetown. She [Banville] knew a house where they could get a gun. And they needed a ride to get there."

The evidence was properly admitted. An extrajudicial statement of a joint venturer may be admitted against a criminal defendant if (a) the statement was made during the course of and in furtherance of a common criminal enterprise and (b) there is sufficient nonhearsay evidence to establish an adequate probability that the declarant and the defendant

were engaged in the criminal enterprise. See *Commonwealth v. Bongarzone*, 390 Mass. 326, 340 (1983); *Commonwealth v. White*, 370 Mass. 703, 708-709 (1976); *Commonwealth v. Cartagena*, 32 Mass. App. Ct. 141, 143-144 (1992). The fact that the defendant was present and joined in the conversation supports the view that he was party to the request for assistance and agreed in the stated objective of the trip to Freetown. Even if the defendant had not been present when the declarant (Banville) spoke, there was adequate evidence to warrant a reasonable inference that a joint venture existed, not only to burglarize the Aubut home in Freetown, but also in connection with the attack on Butts. On January 5, the Aubut home had been burglarized, and guns had been stolen. Banville and her family had lived in the Aubut home some years before and she knew about Aubut's firearms. An inference was warranted that Banville and the defendant had been together on January 8 and 9, and that they kidnapped Butts, shot him, and stole his vehicle, cash, and jewelry.

3. The judge did not instruct the jury how they should treat evidence of Banville's hearsay statement. The jury should have been told that they could rely on Banville's statement only if they first found, based on nonhearsay evidence, that a joint venture had existed. See *Commonwealth v. Borans*, 379 Mass. 117, 145 n.26 (1979); *Commonwealth v. Beckett*, 373 Mass. 329, 340 (1977). The defendant did not, however, request such an instruction. Consequently, we consider the defendant's argument solely to determine whether the absence of an instruction concerning the jury's use of Banville's hearsay statement created a substantial risk of a miscarriage of justice. Considering all the evidence, we conclude that it did not. The Appeals Court engaged in the same process and reached a similar conclusion in *Commonwealth v. Cartagena, supra* at 145-146 ("We consider it extremely unlikely, in the circumstances, that a correct instruction on the use of the hearsay [joint venture] evidence would have affected the outcome of the case").

The only statement attributed to Banville, as opposed to those attributed to both Banville and the defendant, is her

statement that she knew a house where they could get a gun. This fact is of relative insignificance when considered in relation to the defendant's former wife's other testimony that the defendant later appeared and left with her the firearms and other items that had been stolen from the Aubut home. She turned them over to the police, and Aubut identified them as his. The hearsay remark could not have had a controlling role in the proof of the crimes charged.

4. The evidence warranted the judge's instruction that the defendant could be guilty of the crimes charged on the theory of joint venture. The defendant does not challenge the substance of the joint venture instruction. Rather, he suggests that, at least as to some charges, the evidence did not support a joint venture theory of guilt. There was evidence as to all charges that warranted a finding beyond a reasonable doubt of each element of that theory: the defendant was present at the scene of each crime; Banville and he intended to commit each crime; and, by agreement, he was willing and available to help if necessary. See *Commonwealth v. Green*, 420 Mass. 771, 779 (1995); *Commonwealth v. Clarke*, 418 Mass. 207, 216 (1994). The fact that the evidence also warranted a finding that the defendant by his own hand committed the various crimes did not make a joint venture instruction inappropriate.

5. The defendant argues that he is entitled to a new trial on all convictions that concern Francis Butts or Butts's property because his conviction of receiving stolen property was inconsistent with his conviction of stealing the same property.[2] The convictions of larceny of Butts's motor vehicle and of armed robbery of Butts are not consistent with the conviction of receiving that same stolen property.[3] The inconsistency was argued unsuccessfully to the judge when the ver-

---

[2]The defendant does not argue that his conviction of the crime of breaking and entering the Aubut property with intent to commit larceny is inconsistent with the stolen property conviction.

[3]Although the defendant contends otherwise, the convictions of kidnapping Butts and armed assault on Butts are not tainted by the inconsistency.

dicts were returned. It was again pressed in the defendant's motion for a new trial. The judge, in response to the prosecutor's recommendation, dismissed the indictment for receiving stolen property and denied the defendant's motion for a new trial.

The question for us is whether dismissal of the indictment for receiving stolen property was an adequate cure for the inconsistencies in the verdict. It is well established that it is inconsistent in law for a defendant to be convicted both of stealing property and of receiving the same property. *Commonwealth* v. *Haskins*, 128 Mass. 60, 61 (1880). The jury should have been instructed that the defendant could not be convicted of receiving stolen property if they found that the defendant had stolen the same property. *Commonwealth* v. *Carson*, 349 Mass. 430, 435-436 (1965). The judge gave no such instruction, and the defendant did not request one. When the inconsistent verdicts were returned, the judge might have sent the jury back for further deliberations with explanatory instructions. He did not do so.

In *Commonwealth* v. *Haskins, supra,* the court rejected a nolle prosequi of one of the counts as an adequate solution to the inconsistency in law in a jury's verdicts. Resolution of such an inconsistency by dismissing one of the charges presents no constitutional infirmity. A legislature could properly enact a statute directing separate punishment for stealing property and for receiving or possessing the same stolen property, as New York has done. See *People* v. *Grant*, 113 A.D.2d 311, 318 (N.Y. 1985). Although some jurisdictions reverse both convictions and order a new trial, as we did in *Commonwealth* v. *Haskins, supra,* most jurisdictions vacate the receiving sentence or vacate the lesser of the two offenses and leave one conviction intact. See Annot., Participation in Larceny or Theft as Precluding Conviction for Receiving or Concealing the Stolen Property, 29 A.L.R.5th 59, at §§ 57, 58, 59 (1995). The majority view among the States is the unanimous view among the United States Circuit Courts of Appeals, which in recent years have consistently held, as a matter of proper Federal practice, that a new trial is not re-

quired in such circumstances. See *United States* v. *Brown*, 996 F.2d 1049, 1055 (10th Cir. 1993) ("Every appellate court decision since [*United States* v. *Gaddis*, 424 U.S. 544 (1976)] has similarly concluded that a new trial is not required where the defendant is convicted for both theft and possession and both counts were properly submitted to the jury"), citing cases from eight other circuits.[4] We have accepted the consequences of inconsistencies in jury verdicts where an acquittal on one charge is factually inconsistent with a guilty verdict on another. See, e.g., *Commonwealth* v. *Robicheau, ante* 176, 184 (1995); *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969); *Commonwealth* v. *McCarthy*, 348 Mass. 7, 14 (1964), and authorities cited. Such a situation could arise when a jury returned a not guilty verdict as to a crime that was unavoidably an element of a greater crime as to which a guilty verdict was returned. We have not identified any prejudice to a defendant in letting a guilty verdict stand in such circumstances (see *Commonwealth* v. *Lowrey*, 158 Mass. 18, 20-21 [1893]), even though the jury might have produced a more favorable result for the defendant, if the jury had understood that their guilty verdict was inconsistent with their not guilty verdict. The assumption that such a jury were being lenient in returning the not guilty verdict (see *Dunn* v. *United States*, 284 U.S. 390, 393 [1932]) may not be correct in all instances. The possibility, however, of jury compromise in such a case has not been sufficient to warrant reversal of a conviction. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 698 (1982); *Commonwealth* v. *Scott, supra*.

Where the evidence has warranted a finding beyond a reasonable doubt of each element of a crime involving larceny, we see no reason to burden the judicial system with a new trial just because the jury also found the defendant guilty of receiving the same stolen property. Dismissal of the receiving

---

[4]Our Appeals Court without discussion set aside a verdict and reversed a conviction of receiving stolen property in just this circumstance in *Commonwealth* v. *McCann*, 16 Mass. App. Ct. 990, 991 (1983), a rescript opinion.

stolen property count would give the defendant all that he was entitled to from the jury, if the jury had received and followed proper instructions. This is the rule that we announce for the future, but the circumstances of this case also provide an adequate basis for affirming the conviction in any event.

Here we are not left with uncertainty, as was the case in *Commonwealth* v. *Haskins*, *supra*, as to what the jury would have done if they had been told to elect between convictions on the larceny-based charges and a conviction on the receiving charge. The jury verdicts on kidnapping, assault, and assault and battery indicate that the jury found beyond a reasonable doubt that the defendant kidnapped Butts, took him to a remote place, and shot him. The jury, properly instructed, would have found that the defendant took Butts's motor vehicle and other property and would not have found that the defendant shot Butts, left the scene without Butt's vehicle and valuables, and later, in some manner not disclosed by the evidence, came into possession of Butts's property. It is appropriate to let stand the convictions based on the taking of Butts's property (larceny and armed robbery) because the charge of receiving stolen property has been dismissed.

6. We have considered the defendant's other arguments. They lack merit. The denial of the defendant's new trial motion presents no issue that we have not already decided.

*Judgments affirmed.*