# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* MCKINLEY WARD. No. 97-P-0209. May 29, 1998. *Controlled Substances. Evidence,* Hearsay, Joint enterprise. *Joint Enterprise. Practice, Criminal,* Instructions to jury.

The defendant was convicted as a second or subsequent offender of unlawful distribution of cocaine in a school zone, and of possession of cocaine with intent to distribute. G. L. c. 94C, §§ 32A(c) & (d). G. L. c. 94C, § 32J. He contends that his convictions should be set aside except for the lesser included offense of simple possession on the grounds that (1) there was insufficient evidence to convict him of intent to distribute cocaine; (2) the judge erroneously admitted hearsay testimony; and (3) the judge failed to instruct the jury that they could rely on a codefendant's statement only if they first found that a joint venture existed. We affirm the convictions.

The jury, taking the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), could have found the following facts. On February 7, 1994, Troopers Baldwin Leon and William Thompson of the Massachusetts State police were in plainclothes, investigating drug cases in Brockton. Trooper Leon was driving an unmarked car while Trooper Thompson rode in the passenger seat. As they traveled down West Elm Street, they saw two men standing in front of Richard's Lounge. One of the men flagged them down, motioning for them to pull over.

Trooper Leon stopped the car across the street from the lounge, and motioned for the two men to approach the car. The two men walked to the passenger side of the car and Kevin Rollins, the codefendant,[1] bent toward the open window. Trooper Thompson asked Rollins whether he was "pumping," street terminology for dealing drugs. Rollins answered, "Yeah, what do you want?" Thompson replied, "A twenty," meaning twenty dollars' worth of a particular drug.

During this conversation, the second man, the defendant, stood behind Rollins, looking up and down the street. When the conversation ended, the defendant spoke with Rollins, walked to the car, bent down, stuck his head in the passenger side window, and looked at the troopers for five to ten seconds. Then he stood up and nodded at Rollins. Rollins pointed his finger at Trooper Thompson, indicating that he should wait a minute, and went into Richard's Lounge with the defendant. They returned within two minutes. Rollins approached Trooper Thompson's side of the car, while the defendant stood in the middle of the street looking up and down. Rollins took out a small plastic

---

[1]The defendant and Rollins were tried separately.

bag containing cocaine and gave it to Trooper Thompson in exchange for a marked twenty dollar bill.

Upon completion of the transaction, Trooper Leon made a radio call to backup units and drove away. The defendant and Rollins re-entered Richard's Lounge, where the backup officers arrested them.[2] As the suspects stood outside the lounge after their arrest, Troopers Leon and Thompson drove by in order to identify them as the men who had sold them the drugs. The defendant. and Rollins were then taken to the police station, where an inventory search disclosed nine bags of crack cocaine in the defendant's pocket.

1. *Sufficiency of the evidence.* At the close of the Commonwealth's case, and again at the close of all the evidence, the defendant moved for a required finding of not guilty on the charges of distribution of cocaine and distribution of cocaine in a school zone. At both points, the evidence was sufficient for the jury to find that the defendant had entered into a joint venture with Rollins to distribute cocaine. The jury could have concluded that the defendant "(1) was present at the scene of the crime; (2) intended to commit the crime of selling drugs or had knowledge that another person, i.e., [Rollins], intended to do so; and (3) by agreement was willing and able to help [Rollins] if necessary." *Commonwealth* v. *Carmenatty*, 37 Mass. App. Ct. 908, 909 (1994), and cases cited.

Trooper Leon testified that the defendant was present from the time the troopers were flagged down throughout the entire drug transaction. Evidence was also presented from which the jury could infer that the defendant knew that Rollins was selling drugs and that he assisted him in doing so. See *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779-780 (1992), cert. denied sub nom. *Sabetti* v. *Dipaola*, 513 U.S. 916 (1994), quoting from *Commonwealth* v. *Costa*, 407 Mass. 216, 225 (1990) ("Knowledge or intent . . . may be proved by inference from all the facts and circumstances developed at trial").

The Commonwealth presented evidence that the defendant acted as a lookout. Twice — during Rollins's and Trooper Thompson's initial conversation and during the exchange of drugs for cash — the defendant stood in the road, looking up and down the street. "[A] person who acts as a lookout while others are engaged in a criminal enterprise can be convicted on a joint enterprise theory." *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 499 n.10 (1991), quoting from *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 411 (1986). While the defendant's association with Rollins and his looking up and down the street did not, in themselves, prove that he was a lookout, see *Commonwealth* v. *Saez*, 21 Mass. App. Ct. at 412, there was additional evidence that he participated in the crime.

The defendant stood directly behind Rollins when Rollins initially offered to sell Trooper Thompson drugs. The jury could have inferred that the defendant heard that conversation, then conversed with Rollins in order to discuss whether to sell to the troopers, peered into the car to look them over, and nodded to indicate that he thought it was safe to sell them cocaine. Finally, the jury could have inferred that after Rollins signaled for the troopers to wait, the defendant and Rollins went into the lounge so that the defendant, who had the stash of drugs in his pocket, could hand Rollins a packet to sell.

---

[2]One of the officers measured 402 feet from the front door of the lounge to the side door of the Arnone School, a public elementary school.

"[T]he facts and circumstances and the reasonable inferences to which they [gave] rise" provided sufficient evidence for the jury to conclude that the defendant participated in the drug sale. *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 217 (1991). See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980); *Commonwealth* v. *Longo*, 402 Mass. 482, 486-487 (1988). The judge properly denied the defendant's motions for a required finding of not guilty.

2. *Hearsay.* The defendant asserts that Trooper Leon's testimony recounting the initial conversation between Trooper Thompson and Rollins, in which Thompson asked Rollins whether he was selling drugs, Rollins answered in the affirmative, and Thompson said he wanted twenty dollars worth, was inadmissible hearsay. These statements were properly admitted over the defendant's objection.

The significance of the conversation was not to prove the truth of Rollins's statement that he was selling drugs. That fact, which was not at issue, was clearly shown through Trooper Leon's direct testimony recounting the details of the transaction. The conversation was relevant for two nonhearsay purposes. First, it put the drug transaction into a context, enabling the jury to understand the complete occurrence. See *Commonwealth* v. *Harris*, 376 Mass. 201, 206-207 (1978) ("evidence of statements . . . attending the commission of a crime is admissible to aid the jury by giving them the benefit of the complete occurrence"). See also Liacos, Massachusetts Evidence § 8.16, at 520 (6th ed. 1994). Second, because the jury could have inferred that the defendant heard the conversation, it showed that he knew that a crime was being planned. The evidence of his knowledge was a link in the chain of proof that he was a joint venturer in the drug transaction. See part 1, *supra.*

In any event, Rollins's statement, even if considered hearsay, was admissible under the well-settled exception that out-of-court statements of coventurers are admissible against the others so long as the statements are made during and in furtherance of the joint criminal enterprise. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 543 (1990), and cases cited.[3] Such statements are admissible contingent upon the presentation of evidence of a joint criminal venture by evidence other than the hearsay statement. *Ibid.* In this case, sufficient nonhearsay evidence was presented of the defendant's participation in the joint enterprise. See part 1, *supra.* Contrary to the defendant's contention, the judge need not make a preliminary finding that a joint venture existed before admitting the evidence. The evidence may be admitted subject to a later motion to strike. *Commonwealth* v. *Colon-Cruz, supra* at 543-544. The defendant made no such motion.

Rollins's statement alone — "Yeah, what do you want?" — would have lost its significance without Trooper Thompson's portion of the conversation to put it in context. See *Commonwealth* v. *Harris*, 376 Mass. at 206-207. Compare *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 165-167 (1995) (a police officer's erroneously admitted hearsay statement was used by the fact finder as evidence that the defendant was guilty of possession with intent to distribute heroin). There was no error in the admission of the conversation.

---

[3]The application of the rule in this case is grounded on the principle that each member of the joint venture is the other's agent with regard to the joint enterprise, and that the acts and statements of one in furtherance of that enterprise are admissible to affect both principal and agent. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 477 (1972).

3. *The instructions.* The jury were not instructed that they could rely on Rollins's statement that he was selling drugs only if they found that a joint venture existed based on independent nonhearsay evidence. Such an instruction is required when the statement of an alleged coventurer is used against a defendant. *Commonwealth* v. *Cartagena,* 32 Mass. App. Ct. 141, 144 (1992). Because the defendant did not request the instruction, we review to determine whether the omission created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Nascimento,* 421 Mass. 677, 681 (1996).

First, as we discussed in part 2, *supra,* the conversation between Rollins and Trooper Thompson was admissible for nonhearsay purposes, and consequently did not require the instruction. Assuming, however, that Rollins's statement was hearsay, the omission created no substantial risk of a miscarriage of justice. Since there was strong nonhearsay evidence of the defendant's participation in the crime, the instruction would have been unlikely to affect the outcome of the case. See *Commonwealth* v. *Cartagena,* 32 Mass. App. Ct. at 144-146. Moreover, Rollins's statement was insignificant as hearsay — i.e., for the truth of the assertion that he was selling drugs — since the jury heard eyewitness testimony describing the transaction. See *Commonwealth* v. *Nascimento,* 421 Mass. at 681-682 (omission of the instruction created no substantial risk of a miscarriage of justice because the relatively insignificant hearsay remark at issue "could not have had a controlling role in the proof of the crimes charged").

*Judgments affirmed.*

*Teresa Walsh Habib* for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.