COMMONWEALTH *vs.* MILTON GORDON.

No. 95-P-445.

Hampden. July 1, 1996. - October 9, 1996.

Present: PERRETTA, KASS, & FLANNERY, JJ.

*Armed Assault with Intent to Murder. Practice, Criminal,* Required finding,
Instructions to jury, Duplicative convictions, Argument by prosecutor.

Evidence at the trial of an indictment on two counts of armed assault with
intent to murder was sufficient to warrant a jury in finding the defen-
dant guilty beyond a reasonable doubt and the defendant's motion for
required findings of not guilty was correctly denied. [462-464]
At a criminal trial, the judge's instructions to the jury on armed assault
with intent to murder and assault by means of a dangerous weapon did
not create a substantial risk of a miscarriage of justice. [464-465]
At a trial of indictments arising from the defendant's single act of pointing
a handgun at police officers, there was no error in convicting the defen-
dant of two counts of armed assault with intent to murder. [465-466]
Remarks by the prosecutor during closing argument at a criminal trial
improperly vouching for the credibility of two police officers were
rendered harmless by ample evidence of the defendant's guilt combined
with the judge's curative instructions to the jury. [466-467]

INDICTMENTS found and returned in the Superior Court
Department on July 15, 1993.

The cases were tried before *John F. Moriarty,* J.

*Carlo Obligato,* Committee for Public Counsel Services, for
the defendant.

*James M. Wodarski,* Assistant District Attorney, for the
Commonwealth.

FLANNERY, J. A Superior Court jury convicted the defen-
dant on two indictments charging armed assault with intent
to murder, G. L. c. 265, § 18(*b*); four indictments charging
assault by means of a dangerous weapon, G. L. c. 265,
§ 15B(*b*); unlawful possession of ammunition, G. L. c. 269,

§ 10($h$)[1] ; unlawful possession of a firearm with an obliterated serial number, G. L. c. 269, § 11B; and unlawfully carrying a firearm in a motor vehicle, G. L. c. 269, § 10($a$). The defendant raises four issues on appeal. First, he claims that the judge erred in denying his motion for a required finding of not guilty as to armed assault with intent to murder because the physical evidence precluded a finding of guilty. Second, he argues that the jury instructions unduly reflected the Commonwealth's theory of the case thereby depriving him of a fair trial. Third, he contends that the two indictments for armed assault with intent to murder punished him twice for the same offense where there was insufficient evidence to prove two separate crimes. Finally, he claims the prosecutor, in his closing, improperly vouched for his witnesses' credibility. We affirm.

Viewing the evidence in the light most favorable to the prosecution, see *Commonwealth* v. *Flynn*, 420 Mass. 810, 814 (1995), the jury, and the judge considering the motion for a required finding of not guilty, could have found as follows. On July 1, 1993, the Springfield police became aware of a running gun battle between the occupants of two motor vehicles driving at high rates of speed in the Mason Square area of Springfield. A cruiser was dispatched to the residential neighborhood, where the officers observed the occupants of a red Mustang automobile and a black Honda automobile exchanging gun fire. The defendant was riding in the front passenger's seat of the black Honda and was observed by several witnesses leaning out the window of the Honda firing a handgun at the Mustang. The battle ended when the Mustang struck a parked car. The three occupants of the Mustang fled on foot.

Officers Moriarty and Shrewchuck then attempted to cut off the combatants in the Honda and succeeded in pinning the Honda against a curb. The driver of the Honda jumped out of the car and ran through an adjacent parking lot. The defendant opened the passenger's door and came out of the Honda carrying a silver-colored handgun. He held the gun in the air and pointed it toward the two officers. The two officers ducked down behind their cruiser, and the defendant

---

[1]The conviction on this indictment was placed on file with the defendant's consent and, consequently, is not before us. See *Commonwealth* v. *Frey*, 390 Mass. 245, 246 (1983).

turned and ran through the parking lot to a chain link fence. He turned toward the pursuing officers, again pointed the gun in their direction, and then threw himself over a fence. When he came up, he pointed the gun at the officers for a third time and both officers thought they saw the gun recoil, although they do not remember hearing any shots. Nor do they remember hearing shots from their own guns, although they opened fire and hit the defendant several times. The defendant continued to run but was finally apprehended.

At the time the defendant was arrested, he was holding a .380 Jennings automatic pistol (pistol). A pistol of that type holds seven live cartridges in the magazine plus one in the chamber. When the pistol was taken from the defendant, there were six live cartridges in the magazine, a seventh live cartridge part way between the magazine and chamber, and a spent cartridge casing jammed (or "stove-piped") in the ejection port, rendering the pistol inoperable. Therefore, all the casings in that round of ammunition were accounted for, and only one bullet had been fired from the gun since the last time it had been fully loaded.

As the police searched the seized Honda, they recovered another gun, a .38 Special Colt revolver. They also found a discharged slug embedded in the rear chrome strip by the window on the passenger's side of the Honda. Ballistic testing established that the slug had been fired from the pistol taken from the defendant upon his arrest. Also, the police recovered a used .380 caliber casing from the pocket of the driver's side door. Ballistics testing established that this casing also had been discharged from the defendant's pistol. However, it was not possible to determine whether or not the slug on the passenger side and the casing from the driver's side door or the slug and the jammed casing in the pistol were parts of the same bullet.

All of the seven live bullets that were found in the defendant's pistol were metal jacketed bullets, and all but one had been manufactured by the Remington Peters Company. The casing that was jammed in the ejection port of the pistol, however, had been manufactured by the Pan Metal Cartridge Company. The slug taken from the chrome strip by the passenger's side window was a hollow point type projectile and not metal jacketed. The cartridge casing found in the driver's side door pocket of the Honda was manufactured by Remington Peters.

1. *Required finding of not guilty.* In reviewing a trial court's denial of the defendant's motion for a required finding of not guilty, we view the evidence in the light most favorable to the Commonwealth, and determine if any rational trier of fact could have found the essential elements of the crime. *Commonwealth* v. *Flynn*, 420 Mass. at 814. It is enough that the inferences the Commonwealth asked the jury to draw from the evidence were reasonable and possible; they need not be "necessary or inescapable." *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977).

The defendant argues that the judge erred by denying his motion for required findings of not guilty on two counts of armed assault with intent to murder because his gun was inoperable at the time of the incident, and thus the Commonwealth failed to show that the defendant had the intent to murder the police officers. It is undisputed that the defendant's gun was inoperable when he was finally subdued. The critical question is at what point it became so.

The defendant maintained at trial that he knew the pistol jammed before he left the Honda, and therefore, when he pointed it at the police officers when he exited the car, he did not harbor the specific intent to kill the officers. Specifically, he argues that the slug found embedded in the chrome strip at the rear passenger-side of the Honda was discharged from the casing that was jammed in the ejection port of the .380 Jennings automatic, and, therefore, the pistol was inoperable when he took it with him when he left the Honda. He bases his argument on a combination of two facts: one, that the embedded slug was a hollow point type projectile, whereas six of the remaining seven bullets found in the pistol's magazine were metal jacketed; and two, the jammed casing was made by Pan Metal Cartridge Company, whereas the other casings in the gun were made by Remington Peters. Thus, the defendant suggests, because the jammed casing was made by a different company, it most likely held a slug of a different kind, to wit, the hollow point projectile. Therefore, the defendant contends, the slug from the hollow point bullet found in the chrome strip of the car was fired from the .380 Jennings before the defendant exited the Honda.

The trial judge found that the defendant's theory would have plausibility but for the fact that a spent casing was found in the pocket of the Honda's door. "The presence of that cas-

ing inside the car suggests that the .380 Jenning pistol had been fired and reloaded at least once in the course of the running gun battle. The defendant was described as leaning out of the car window while shooting at the Mustang. Because the .380 Jenning was a semi-automatic weapon, if it operated as designed and did not jam or 'stove pipe,' its expended cartridge casings would most probably be strewn in the streets along the line of battle rather than in the vehicle — and it was by pure chance that even one of them found its way into the door pocket of the Honda. If, as seems probable, the weapon had been emptied and reloaded at least once in the course of the affray, the defendant's argument that the embedded projectile was discharged from the 'stove piped' casing is pure speculation."

The defendant argues, however, that the judge made two factual errors. One, the judge erred when he found that the casing found in the Honda was recovered from the passenger's side door when, in fact, it was found in the driver's side door. This being so, the court's scenario, that the casing ricocheted into the passenger door pocket as the defendant was firing the gun, makes little sense. Moreover, the casing might have been the result of an unrelated shooting episode the day before and not the product of the incident in question.[2] Second, the defendant argues that the gun seen being fired from the Honda during the gun battle was the .38 Colt revolver, not the .380 Jennings, as the judge assumed.

The question before us is whether, under the Commonwealth's theory of the case, the defendant could be found guilty of assault with intent to murder beyond a reasonable doubt. We conclude that the presence of the casing found in the driver's side door pocket of the Honda simply suggests that the gun had been emptied before the loading of the round of ammunition contained in the defendant's pistol upon his arrest.[3] The presence of the casing adds little else.

More important, even without the presence of the casing, the jury could reasonably conclude that the pistol was

[2]The defendant testified that the day before the gun battle in question, one Oliver Samuels fired the same .380 Jennings at a rival who shot at him. This all happened when Samuels was driving the Honda.

[3]Because all eight casings were found in the pistol upon the defendant's arrest, the casing found in the door pocket had to have come from another round of ammunition.

reloaded during the course of the ongoing gun battle, and the embedded slug was lodged by any one of the bullets that were fired during the battle between the two vehicles.[4] That conclusion, in combination with the testimony of the two police officers and two witnesses, was sufficient to convict the defendant. The officers testified that the defendant pointed the pistol at them three times, and, on the last occasion, they saw the gun recoil in the defendant's hand. Moreover, the sounds heard by two witnesses corroborated the officers' testimony that the defendant first fired his weapon, and the officers returned fire with a short volley of shots. The witnesses heard a single shot, followed immediately by the sound of several more shots. One of the witnesses also testified that he watched the defendant jump the fence and then aim backwards to "take a shot at the police." Thus, to the extent the evidence presented conflicting inferences, the trial judge properly left it for the jury to determine the truth and properly denied the defendant's motion for a required finding of not guilty. *Commonwealth* v. *Fernette*, 398 Mass. 658, 672 (1986). Taken in the light most favorable to the Commonwealth, the evidence was sufficient to convict the defendant of armed assault with intent to murder.

2. *Jury instructions.* On the indictments charging armed assault with intent to murder, the main question for the jury was whether the defendant's pistol was inoperable before he left his car or whether it became so as a result of shooting at the officers. The defendant argues that parts of the instructions given by the judge deprived the defendant of a fair trial because they only took into account the Commonwealth's theory of the case.[5] The instruction as framed, the defendant

---

[4]There was no ballistic evidence admitted by either side to match the slug taken from the car with either the casing found in the handgun or the casing found in the door pocket.

[5]The judge gave the following instruction on armed assault with intent to murder: "I suggest that for the purposes of this indictment the type of assault that would be necessary would necessarily be an attempted assault and battery that failed either because the *defendant shot and missed or because the defendant attempted to shoot and attempted to hit but the gun misfired for whatever reason.* I think that kind of an assault would be those for purposes of these first two indictments." (Emphasis added.) The defendant also argues that the instruction given with regard to the assault by means of a dangerous weapon, together with the above instruction, unduly advocated the Commonwealth's theory of the case. The defendant points to

posits, may have influenced the jury to conclude that the gun did not jam until after the defendant shot at the officers.

As the defense did not object to any of the jury instructions, we review them under the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Johnson*, 39 Mass. App. Ct. 410, 413 (1995). The defendant concedes that the instructions were not incorrect as to the law. He argues simply that the instructions may have led the jury to conclude that the gun did not jam until after the defendant shot at the officers. We do not agree with the defendant's interpretation of the instruction. In any event that argument ignores the efforts of the defendant's trial counsel. The whole strategy at trial was to convince the jury that the slug in the window came from the jammed casing and, thus, was fired while the defendant was in the car. The jury were well aware that the critical issue at trial was when the pistol jammed, and that the Commonwealth bore the burden of proving its theory. There was no risk of a miscarriage of justice.

3. *Twice punished for the same offense.* The defendant's third issue on appeal is that he could not be validly convicted of two counts of armed assault with intent to murder because, even if the Commonwealth was correct that the gun jammed after he fired once at the officers, it was impossible for him to harbor the intent to kill both officers. He urges us to rule that a single act of pointing the gun at the officers and shooting once was insufficient to prove two separate armed assaults with intent to murder. Thus, one of the two convictions must now be reversed as duplicative. We disagree.

To support a conviction of armed assault with intent to murder, the Commonwealth had to prove "beyond a reasonable doubt that the defendant committed an assault, that he was armed with a dangerous weapon, and that he had the specific intent of murdering the victim[s] in assaulting [them]." *Commonwealth* v. *Lopez*, 383 Mass. 497, 500 (1981). The jury did not have to find that the defendant discharged

---

the following language: "If a person aims a gun at another with the specific intention of shooting that other person and fails, *either because he shoots and misses or because the gun jams or for whatever reason,* but with the general intent, now, to shoot, to actually shoot and hit that person, that's one type of assault with a dangerous weapon. That's an assault that was intended to be an assault and battery but failed for one reason or another." (Emphasis added.) Later, the court reiterated a similar instruction.

the pistol. See *ibid.* Thus, that the pistol possibly became inoperable after the first shot is irrelevant. The point at which to measure specific intent is the moment the defendant pointed the pistol at the officers. "[T]he weapon need not have been used, and a battery need not have been committed." *Ibid.* There was no error in convicting the defendant of two counts of armed assault with intent to murder.

4. *Closing argument.* The defendant contends that the prosecutor improperly vouched for the credibility of Officers Shrewchuck and Moriarty in his closing argument. The defendant argues that because the trial hinged on the credibility of the two officers, who testified that the defendant shot at them, versus that of the defendant, who denied doing so, the prosecutor's remarks were so prejudicial as to require reversal of the defendant's convictions.

The prosecutor stated in his closing argument: "[W]hat they [the officers] did is, they told the truth. And the reason they told the truth, ladies and gentlemen, is that's what they do." Defense counsel objected that the prosecutor's remarks improperly vouched for the credibility of the officers. The judge agreed with defense counsel, although he commented that the statement was not "anything that was too bad," and gave a curative instruction. The defendant now contends that the instructions were inadequate to mitigate the error.

"In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984), quoting from *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 885 (1984). The prosecutor's statement came in the context of recounting the defendant's attempt to discredit Officer Shrewchuck during cross-examination by showing an alleged inconsistency between the police report he authored and his subsequent testimony at trial. Defense counsel highlighted the fact that the officer put "appeared to shoot" in his police report, yet testified at trial that he saw the gun "recoil" in the defendant's hand. The prosecutor's remark was an attempt to respond to that credibility attack. To mitigate the error, the judge informed the jury, as the defendant requested, that closing arguments were not evidence. Further, the judge gave a comprehensive instruction on the jury's exclusive responsibility for determining the credibility

of the witnesses. The ample evidence of guilt combined with the curative instructions rendered the prosecutor's improper remark harmless.

*Judgments affirmed.*