COMMONWEALTH *vs.* BITIN RAMOS RIVERA.

No. 98-P-1793.

Norfolk. January 26, 2000. - March 2, 2001.

Present: ARMSTRONG, C.J., SMITH, & BROWN, JJ.

*Practice, Criminal,* Required finding, Comment by prosecutor, Assistance of counsel. *Evidence,* Joint venturer, Statement of codefendant, Certificate of drug analysis.

At the trial of indictments, the judge properly denied the defendant's motion for a required finding of not guilty, where the evidence presented warranted a reasonable inference that the defendant was engaged in a joint venture with two others to traffic in cocaine. [103-104]

At the trial of two defendants for trafficking in controlled substances, a certain hearsay statement of a third coventurer implicating one defendant was properly admitted in evidence, where there was ample evidence that the two defendants were engaged in a joint venture at the time the statement was made; moreover, the absence of an instruction with respect to the jury's use of the hearsay statement did not, in the circumstances, create a substantial risk of a miscarriage of justice. [104-105]

Remarks by the prosecutor during closing argument at a criminal trial did not amount to improper vouching for the credibility of a police witness, in view of the argument as a whole, the evidence at trial, and the judge's instructions to the jury. [105-106]

A Federal Drug Enforcement Administration report was admissible in evidence at a criminal trial pursuant to G. L. c. 111, § 13, where the chemist who prepared the report testified at the trial. [106]

At a criminal trial, there was no error in the admission of certain evidence that did not constitute hearsay, either direct or indirect. [106-107]

A criminal defendant's claim that his trial counsel rendered ineffective assistance was without merit. [107]

INDICTMENT found and returned in the Superior Court Department on May 8, 1996.

The case was tried before *Julian T. Houston*, J.

*Robert L. Sheketoff* for the defendant.

*Melissa Weisgold Johnsen,* Assistant District Attorney, for the Commonwealth.

SMITH, J. In May of 1996, the defendant was indicted for trafficking in 200 grams or more of cocaine. After a joint trial with the codefendant, one Rafael Flores Lopez, the jury found the defendant guilty. On appeal, the defendant claims that (1) the judge improperly denied his motion for a required finding of not guilty; (2) a coventurer's statement was erroneously admitted; (3) the prosecutor improperly appealed to the jury's emotions during his closing argument; (4) the judge erroneously admitted a Federal Drug Enforcement Administration (DEA) report; (5) hearsay that amounted to an extrajudicial identification was improperly admitted; and (6) to the extent the errors recited herein were not preserved by proper objection, counsel was ineffective. We set forth the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *DePalma,* 41 Mass. App. Ct. 798, 799 (1996).

On four occasions during February and March of 1996, State Trooper Richard Noone, an undercover narcotics investigator, bought large quantities of heroin from Lopez and one Petra Valerio.[1] The sales took place in their Brookline apartment. During the purchases, Valerio participated in the negotiations and served as a translator for Lopez and Noone, but Lopez always gave the heroin to Noone and took Noone's money.

On April 4, 1996, Noone called Valerio and told her that he wanted a large quantity of cocaine in the near future. Valerio said that they could do it. On April 9, 1996, Noone arranged to buy more heroin from the couple. When he arrived at the apartment building Valerio yelled to him from a window in the apartment and pointed to the rear door in the building. Seconds later, Lopez came out of the building through that door, and the two walked to a nearby car where Lopez retrieved heroin from the tire well area. Lopez handed Noone the drugs in exchange for $250.

During this transaction, Noone tried to talk to Lopez about purchasing cocaine, but the language barrier between the two made the conversation difficult. Lopez agreed to go back to the apartment so that Valerio could translate for them.

---

[1]Valerio's trial was severed from that of Lopez and the defendant.

Once in the apartment, Noone told Valerio that he wanted ten ounces of cocaine (about 280 grams). Valerio turned to Lopez and spoke to him in Spanish. Lopez then took out two small pieces of paper and a calculator from underneath a sofa cushion. He then made a telephone call and conversed with someone in Spanish. Noone asked Valerio what Lopez was doing and she responded that Lopez was "calling for the cocaine." When he completed the conversation, Lopez punched numbers into the calculator and showed the calculator, displaying the number $8,500 to Noone. When Noone agreed to that price, Valerio told him the cocaine would be there in about one hour and that she would page him when it arrived.

Noone left the apartment. He and his fellow officers planned that, once Noone was paged to return for the cocaine, a search warrant would be obtained for the apartment and a surveillance team would maintain a watch for the person delivering the cocaine. Valerio paged Noone shortly after 3 P.M. When he called her back she told him that "the guy was there with the cocaine." During the conversation, Noone heard a male voice other than Lopez's in the background.

Once the police surveillance and search teams were in place, Noone went to the apartment. Inside the apartment, Lopez produced the cocaine and handed it to Noone, who, after inspecting it, put it in his pocket. When Noone handed Lopez only $4,000, less than half of the $8,500 agreed-upon price, Lopez and Valerio demanded the rest of the money and became physically shaken and nervous. Valerio said that if they did not get the money, they would be killed. Noone told her that the rest of the money was in his car. Valerio accompanied Noone out of the apartment, ostensibly to get the money.

As Noone and Valerio left the building, they passed the search warrant team as the team headed for the apartment. Initially, Valerio wanted to flee, but Noone convinced her to return with him to the apartment. Lopez was apprehended in the rear hallway of the building.

While the search team was in the apartment, the telephone rang and Valerio was allowed to answer it. After she concluded the call, Valerio spoke to a Lieutenant Bearfield of the search team. Bearfield then instructed the search team to close the

apartment door in order to make it appear as if the police were not there.

At the same time, Detective Paul Kelliher and Detective Sergeant Michael McCarthy left the apartment and walked to a nearby basketball court across the street and adjacent to a housing development. There were some youths at the basketball court whom Kelliher recognized as local youths who lived in the housing development. Kelliher immediately focused his attention on a man (defendant) who did not appear to be a high school student. Kelliher saw the defendant pick up a loose basketball and take a shot. Kelliher was not familiar with the defendant. He then approached the defendant and identified himself as a police officer. The defendant told the detective that his name was Bitin Rivera. When Kelliher asked him what he was doing on the playground, the defendant responded that he did not live in the adjacent housing development, and that he had gone to McDonald's on Commonwealth Avenue and had parked his car near the playground because he could not find any parking spaces on Commonwealth Avenue. There was no McDonald's restaurant, however, in the immediate vicinity of the basketball court. The nearest McDonald's was two blocks away. The defendant was arrested as a result of his response and other evidence that was later excluded at trial.

A pager was seized from the defendant. The defendant told police that his pager number was "228-2924." The detectives also seized miscellaneous handwritten notes with names and telephone numbers, an ATM card and a telephone card in the name of "Johnny Villanueva," and an accordion-style phone book with the name "Bitin Rivera" on it (the name "Johnny Villanueva" was underneath and scratched out), along with the number "617-593-0948" and the address of 17 Kensington Park in Lynn.

Robert Maguire, an official from the telephone company, testified that the telephone number "593-9524" was listed to Johnny Villanueva at the Lynn address and that the "617-593-0498" number was listed as the former telephone number to the same person at the same address. The current number and address matched the telephone number and address that the defendant gave the police when he was booked. A comparison

of photographs indicated that Bitin Rivera and Johnny Villan-
ueva were the same person.

The search of the apartment yielded the two pieces of paper
underneath the sofa cushion where Lopez had left them. On one
of the pieces of paper were two numbers, "228-2924" and
"593-9524," which corresponded to the defendant's pager and
then current telephone numbers, respectively.

Noone testified that, based on his experience and training
with bulk weight drug purchases as opposed to street sales, sup-
pliers often remained in the vicinity near where the transaction
was to take place because, when the quantity of drugs is large,
there is a greater risk of losing control of the narcotics that they
had supplied to the seller.

1. *Denial of defendant's motion for required finding of not
guilty.* The defendant claims that the judge erred when he denied
his motion for a required finding of not guilty because the
evidence was insufficient, as matter of law, to link the defendant
to the cocaine Lopez sold to the undercover officer.[2] The theory
of the Commonwealth's case was that the defendant was
involved in a joint enterprise with Lopez and Valerio to traffic
in cocaine.

To prove joint venture, the Commonwealth must establish the
defendant's (1) presence at the scene of the crime, (2)
knowledge that a crime is to be committed, and (3) agreement
to aid in bringing the crime to completion. *Commonwealth* v.
*Perry,* 432 Mass. 214, 223 (2000). The defendant does not
contest that he was present near the scene of the crime, but
argues that the evidence was insufficient to establish the other
two factors.

The Commonwealth relied on circumstantial evidence. "A
conviction may be properly based entirely on circumstantial
evidence so long as that evidence establishes the defendant's
guilt beyond a reasonable doubt." *Commonwealth* v. *Martino,*
412 Mass. 267, 272 (1992). Where "the evidence is largely
circumstantial, 'it is not essential that the inferences drawn
should be the only necessary inferences . . . . It is enough that

---

[2]The defendant does not contest on appeal that the Commonwealth proved
that the drug seized was cocaine and that its weight exceeded 200 grams.

[the inferences] be reasonable and possible.' " *Ibid.*, quoting from *Commonwealth* v. *Merrick*, 255 Mass. 510, 514 (1926).

The evidence in the light most favorable to the Commonwealth shows that after Noone ordered a large quantity of cocaine, Lopez took two pieces of paper from underneath a sofa cushion, examined them, and made a telephone call. There was evidence that the papers examined by Lopez listed the defendant's home telephone and pager number. Immediately after the telephone call, Lopez told Noone that the cocaine would be there in about an hour. After Noone left, he was contacted by Valerio and she told him that the cocaine was there. During the conversation, Noone heard an unknown male's voice. When Noone returned to the apartment, the cocaine he had ordered was delivered to him by Lopez.

Across the street, the officers saw the defendant on a basketball court. They recognized the other youths, but the defendant was a stranger to them. The defendant, who lived in Lynn, explained his presence on the basketball court in Brookline by telling the officers that he had visited McDonald's about two blocks away and had parked his car in the vicinity of the basketball court because he could not find a place to park near McDonald's. The defendant was also found to be in possession of false identification and a pager. These circumstances, combined with Noone's testimony that suppliers of large amounts of narcotics will remain in the vicinity of the transaction in order to keep an eye on their product (narcotics) that they had supplied, warranted a reasonable inference that the defendant was engaged in a joint venture with Lopez and Valerio to traffic in cocaine. See, e.g., *Commonwealth* v. *Rivera*, 40 Mass. App. Ct. 308, 310-313 (1996) (sufficient evidence of defendant's participation in joint venture to traffic cocaine where his connection to a "stash pad" was shown through circumstantial evidence). Accordingly, the judge did not commit error in denying the defendant's motion for a required finding of not guilty.

2. *Admission of coventurer's statement.* The defendant argues that Noone should not have been allowed to testify that Valerio told him Lopez was "calling for the cocaine." The defendant argues that the statement should not have been admitted pursu-

ant to the coventurer exception to the hearsay rule because there was insufficient nonhearsay evidence to establish a joint venture. The defendant did not object to the admission of the statement.

"An extrajudicial statement of a joint venturer may be admitted against a criminal defendant if (a) the statement was made during the course of and in furtherance of a common criminal enterprise and (b) there is sufficient non-hearsay evidence to establish the adequate probability that the declarant and the defendant were engaged in the criminal enterprise." *Commonwealth* v. *Nascimento*, 421 Mass. 677, 680-681 (1996). Here, there was ample evidence that Valerio, Lopez, and the defendant were engaged in a joint venture at the time she made the statement to Noone. See section 1, *supra*. The statement, therefore, was properly admitted.

The judge should have charged the jury that they could rely on Valerio's statement only if they first find, based on nonhearsay evidence, that a joint venture had existed. See *id.* at 681. The defendant did not, however, request such an instruction and, considering all of the evidence, we conclude that the error did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Cartagena*, 32 Mass. App. Ct. 141, 144 (1992). "We consider it extremely unlikely, in the circumstances, that a correct instruction on the use of hearsay [joint venture] evidence would have affected the outcome of the case." *Id.* at 146.

3. *Prosecutor's comment during closing argument.* The defendant claims that certain of the prosecutor's comments during closing argument amounted to prejudicial error.[3] Because the defendant did not object to the comments, we review this issue to ascertain whether the comments were in error and, if so, whether they created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Amirault*, 424 Mass. 618, 652 (1997).

Remarks made during a closing argument are viewed in the context of the entire argument and in light of the judge's instruc-

---

[3]Specifically, the defendant cites the following comment by the prosecutor: "[Sergeant Noone] is not doing it for fame and fortune . . . . He is doing it for us, for you, for me, for everybody in this courtroom. Except for maybe a few people, he's doing it for us. He is an undercover narcotics officer because he chooses to be."

tions to the jury and the evidence at trial. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). Here, during the course of the trial and in closing argument, both the defendant and his codefendant attacked the credibility of Noone, the manner in which he conducted the undercover operation, and his ability to remember the details of each transaction. The prosecutor's remarks did not amount to improper vouching for the witness, but were merely an attempt to respond to the defendants' attacks on Noone's credibility. See, e.g., *Commonwealth* v. *Gordon*, 41 Mass. App. Ct. 459, 466 (1996). Further, the judge instructed the jurors that it was their exclusive responsibility to assess and evaluate the credibility of the witnesses and advised them that closing arguments are not evidence. *Ibid.* Although those remarks would better have been left unsaid, in view of the argument as a whole, the evidence at trial, and the judge's instructions to the jury, there was no error.

4. *The admission in evidence of the DEA certificate.* The defendant claims, and the Commonwealth concedes, that the judge was mistaken in allowing in evidence the DEA certificate and analysis as a business record. According to the defendant, the report did not meet the requirement that it must be prepared in advance of litigation. *Commonwealth* v. *Trapp*, 396 Mass. 202, 208-210 (1985). The report, however, was admissible under G. L. c. 111, § 13, especially where the chemist who prepared the report testified at the trial. There was no error.

5. *Admission of evidence that Valerio was brought to the basketball court.* Noone testified that he brought Valerio to the basketball court while the officers were talking to the defendant. The defendant objected, reminding the judge that he had excluded any evidence that Valerio had identified the defendant. After securing the prosecutor's assurance that he was not going any further, the judge overruled the objection.

On appeal, the defendant claims that the prosecutor, by eliciting testimony that Noone brought Valerio to the basketball court, was attempting to have the jury draw the inference that Valerio had subsequently identified the defendant as the supplier of the cocaine. The defendant, citing *Commonwealth* v. *Kirk*, 39 Mass. App. Ct. 225, 229-230 (1995), contends that such testimony constituted indirect hearsay and was inadmissible. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 508-510 (1999).

Noone's testimony that he brought Valerio to the basketball court did not constitute hearsay, either direct or indirect. There was no evidence that, after her arrival, the defendant was arrested as a result of "information received"· or "as a consequence of a conversation" thereby pointing to Valerio as the source. See *Commonwealth* v. *Perez,* 27 Mass. App. Ct. 550, 554-555 (1989), for a thoughtful analysis of the problems caused by such testimony. The fleeting reference in the prosecutor's closing argument to the appearance of Valerio at the basketball court did not imply that Valerio had made an identification of the defendant as the supplier of cocaine, or otherwise constitute error, especially in view of the judge's instructions to the jury that it was their memory of the evidence that controlled. Accordingly, there was no error in the admission of evidence that Valerio was brought to the basketball court.

6. *Ineffective assistance of counsel.* The defendant claims on appeal that his trial counsel was ineffective because he failed to object to the admission in evidence of Valerio's statement as a coventurer, to evidence that Valerio was brought to the basketball court, or to the prosecutor's remarks in closing argument.

Because we have held that there was no error committed in regard to the defendant's claims, no prejudice resulted to the defendant. The defendant's claim that his trial counsel was ineffective is without merit.

*Judgment affirmed.*